(A. R. D. 36)

## United States v. Nelson Bead Co.

Entry No. 758543.

Second Division, Appellate Term

(Decided December 22, 1953)

*Warren E. Burger*, Assistant Attorney General (*Chauncey E. Wilowski*, special attorney), for the appellant.

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the appellee.

Before LAWRENCE, RAO, and FORD, Judges; FORD, J., dissenting

RAO, Judge: This is an application for review of a decision and judgment of a single judge upon a reappraisement appeal in which it was held that an item, described on the invoice as a 15 per centum buying commission, was, in fact, a *bona fide* buying commission, and, therefore, not properly a part of the export value of an importation from Czechoslovakia of crystal prisms or trimmings for illuminating glassware.

The merchandise in question, identified by the manufacturer's item numbers 130 and 131, in various sizes, and of two qualities, was ordered on October 28, 1946, and shipped in November 1946. It was entered on the basis of the invoice unit values, plus 3 per centum for cases and packing, and was appraised at the invoice units, plus 15 per centum, less 2 per centum cash discount, plus 3 per centum for cases and packing. Thus, it is apparent that the ultimate issue for determination here, as it was in the trial court, is whether the 15 per centum buying commission is properly a part of the value of the merchandise.

It being conceded that export value, as defined in section 402 (d) of the Tariff Act of 1930, is the proper basis of value for the instant

merchandise, and the only item in dispute being the so-called buying commission, the trial court properly invoked the doctrine of *United States* v. *Fritzsche Bros., Inc.,* 35 C. C. P. A. (Customs) 60, C. A. D. 371, to the effect that the presumption of correctness of an appraisement stands as to every element essential thereto except the one which has been challenged.

On the issue of the dutiability of the buying commission, two witnesses testified in behalf of plaintiff, and there were introduced into evidence an affidavit of the manufacturer of the subject merchandise, plaintiff's exhibit 1, and an affidavit of appellee's commissionaire, plaintiff's exhibit 2. Five witnesses were called for the defendant and six exhibits were offered and received in evidence. These include an invoice from a Czechoslovakian exporter listing purchases from various manufacturers, among whom was the manufacturer of the instant merchandise (defendant's exhibit 3); certain correspondence between the Czecho-Slovak Crystal Importers Association, Inc., and the Economic Group of the Glass Industry of Czechoslovakia, defendant's collective exhibit 4; correspondence between a Czechoslovakian manufacturer and commissionaire and an American importer, defendant's collective exhibit 5; an invoice from the manufacturer of the instant merchandise covering goods sold to an American importer, defendant's exhibit 6; another invoice from a Czechoslovakian manufacturer, defendant's exhibit 7; and a price list from that same manufacturer, dated March 5, 1946, defendant's exhibit 8.

The trial judge carefully and fully reviewed and evaluated the evidence in this case, and no useful purpose would be served in detailing it at length here. It is sufficient to observe that it has been amply established by the instant record that in the purchase of crystal prisms of the type involved in this case, American buyers ordinarily and usually employ a commissionaire in the country of exportation. The commissionaire serves the function of taking the prospective purchaser from one factory to another in the area where prisms are produced; helping the purchaser to transact his business with the manufacturer; receiving the purchased goods; inspecting the same; preparing the invoices and other shipping documents; and arranging for the exportation of the merchandise. For these services in connection with overseas shipments, the commissionaire receives a commission of 15 per centum of the total invoice value.

These buying commissionaires represent the purchasers only, are paid by the purchasers, are recognized by the manufacturers as representatives of the purchasers, and are not retained either directly or indirectly by the manufacturers. Neither do they receive from the manufacturer any fee or other compensation whatsoever.

There is also evidence in the record that although the foregoing is the usual, ordinary, and prevailing system in Czechoslovakia for

the purchase of glass prisms, and was the method by which the instant merchandise was purchased, manufacturers will, and on occasion do, sell directly to American buyers for exportation to the United States without the intervention of a commissionaire. On such occasions, sales of glass prisms, packed ready for shipment to the United States, are made ex-factory, at the invoice unit prices, plus a commission of 15 per centum for export services rendered. The exact nature of the services for which the commission is charged is not, however, established.

In connection with direct sales by the manufacturer, defendant's collective exhibit 4 contains a communication from the Economic Group of the Glass Industry of Czechoslovakia, in answer to an inquiry posed by the appraiser at New York and forwarded by the Czecho-Slovak Crystal Importers Association, Inc., an American association of importers of glass prisms, of which all of the trade witnesses in the instant case are members, in which the following is stated:

2 If a Czechoslovakian manufacturer supplies an importer direct, without the intervention of a commissionaire, he, as a rule, also charges a 15% advance under the title of "15% advance for export service rendered." If, for instance, a chandelier trimming item is sold by the manufacturer in the home market at the price of 100, he will, by transacting the export business direct, have to cover his overhead expenses accruing by the export business, namely in such a way that he puts on the price of 100 a 15% advance for export service rendered. By this selling advance the export overheads of the manufacturer are being covered which, as a matter of fact, are omitted for an inland business.

Defendant's collective exhibit 5, a communication from A. Schonbek & Co. of Smrzovka, Czechoslovakia, both a manufacturer and a commissionaire, to I. Albert Co., of which defendant's witness, Isaac Albert, is a partner, also reveals the practice obtaining with respect to direct sales. It states:

The merchandise made by ourselves we shall invoice hereafter as follows:

We are charging the ground prices like on merchandise we are purchasing from manufacturers and add the 15% selling advance separately at foot of the invoice, under the title "15% advance for export service rendered".

This proposition was worked out by our Ministry for foreign trade, who most likely represents the stand-point that the 15% advance for export service rendered is to be considered as a non-duty item and that, therefore, from a custom technical point of view, it will be the same for the American Importer whether he purchases from the manufacturer direct, or through the intermediary of an Exporter.

We do hope that the American Customs will represent the same stand-point as our Ministry for foreign trade.

It should be considered as logical that the 15% advance has not to be paid duty on as, de facto, it does not represent any additional profit but a remuneration for the expenses involved with the settlement of the export transactions, which the manufacturer has to bear likewise, if he exports directly and for which the exporter gets a remuneration in the way of a commission of 15%.

It further appears from a price list of the firm of A. Schonbek & Co., dated March 5, 1946, defendant's exhibit 8, that subsequent to the war, but prior to July 1946, when the practice outlined in defendant's collective exhibits 4 and 5 was initiated, merchandise of the type here involved was offered for sale by the manufacturer at unit prices which were inclusive of a 15 per centum commission. We think, however, that it is sufficiently established that at and prior to the time the instant merchandise was exported the 15 per centum commission for export services rendered was separately invoiced. Moreover, it is clear to us that this method of invoicing was open and aboveboard, and constituted a *bona fide* endeavor to present the question of the dutiability of this item to our customs officials.

Thus, it will be seen that there existed in Czechoslovakia at all the times pertinent to the instant transaction an established setup for direct sales from manufacturer to American purchaser, and in such cases a charge for export services rendered was made by the seller, which charge coincided with the commission paid to the buying agents of American importers.

The trial judge recognized the existence of the procedure whereby sales were made without the intervention of a buying commissionaire, but, after carefully analyzing and weighing all the evidence in the case, came to the conclusion that sales made in that fashion were fugitive and occasional and not in the ordinary course of trade. Hence, he refused to accept the same as having any material bearing on the question of whether the commission charged by the buyer's agent was a dutiable item. He found affirmatively that the disputed commission was "a charge for services associated with the purchase of merchandise in the foreign market, and * * * not an amount that inures to the benefit of the seller, * * *." Under the authority of the cases of *United States* v. *Bauer et al.*, 3 Ct. Cust. Appls. 343, T. D. 32627; *United States* v. *Case & Co., Inc.*, 13 Ct. Cust. Appls. 122, T. D. 40958; *United States* v. *Alfred Kohlberg, Inc.*, 27 C. C. P. A. (Customs) 223, C. A. D. 88; and *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T. D. 31007, the trial court held the commission to be a *bona fide* buying commission, not a part of the export value of the merchandise.

We are of opinion that the weight of the evidence sustains the finding that direct sales by the manufacturers were not made in the ordinary course of trade, and that the usual and ordinary method of purchasing glass prisms was through the intervention of a buying agent who received a *bona fide* buyer's commission for the services he rendered in facilitating delivery to his principal of the goods which were ordered in the foreign market. Some more compelling evidence than two isolated instances of direct sales of such or similar merchan-

dise, defendant's exhibits 6 and 7, an outmoded price list, defendant's exhibit 8, and a practice for handling such sales when, and if, they occurred, would be necessary to counteract the effect of the convincing testimony of plaintiff's witnesses Nelson and Gottesman and defendant's witnesses Levin and Albert. Nelson testified that "99% of my business—all my purchases and all my records were always through a commissionaire." Gottesman's business was always conducted through a commissionaire. Levin, one of the major importers of such and similar merchandise, stated that prior to 1948 he made no attempt to buy from a manufacturer directly. As for Albert, except in isolated cases, all of his business was transacted through commissionaires.

We are not, however, content to rest our decision upon this ground alone. Even were it to be considered that sales made without the assistance of a buying commissionaire, though not numerous, were, nevertheless, in the usual course of trade, the commission charged by the manufacturer for export services rendered, would not, in our opinion, enter into the market value of such or similar merchandise.

In the case of *United States* v. *International Commercial Co., Inc., and Armour & Co.; International Commercial Co., Inc., and Armour & Co.* v. *United States*, 28 Cust. Ct. 629, Reap. Dec. 8112, it was stated:

> Any reading of the provision for export value contained in section 402 (d) of the Tariff Act of 1930 must reveal that the value therein contemplated is for merchandise "in condition, packed ready for shipment to the United States," that is to say, a value including the *per se* value of the goods and only those costs, charges, and expenses which accrue up to the time when the merchandise is in the said condition. Any costs, charges, or expenses, other than the foregoing, even though included in the offered price, are not part of the export value for tariff purposes. See *United States* v. *New England Foil Corp.*, 10 Cust. Ct. 596, Reap. Dec. 5856, and *Henry D. Gee Co.* v. *United States*, 24 Cust. Ct. 508, Reap. Dec. 7772.

Plaintiff's exhibit 1 makes it clear that the items of merchandise contained in the shipment at bar were freely offered for sale at the factory, packed ready for shipment to the United States, at the invoice prices. The additional charge did not accrue, or become an element in the price to the purchaser, until after it was known whether the services associated with effecting delivery to the purchaser would be assumed by one other than the seller. If an American purchaser approached a manufacturer in the company of a commissionaire, or indicated that a commissionaire would enter into the transaction, the seller did not include in his price a charge for such additional services. It was only when a manufacturer was called upon to do something more than place his merchandise in condition, packed ready for shipment to the United States; when he was required to undertake the duties of facilitating delivery to the

purchaser, that he charged a fee to defray the expenses of such acts. As stated in *Stein* v. *United States, supra*:

> * * * The commission would seem to be a service connected with the fulfillment of the contract, rather than a performance of any of its terms. It entered into the cost of the goods to the importer but did not become a part of their actual market value.

Since the merchandise was in condition, packed ready for shipment to the United States, prior to the time when the charge for export services accrued, the charge, when assessed, did not become a part of the export value of the merchandise, as that value is defined in section 402 (d) of the Tariff Act of 1930.

We therefore find as matters of fact that—

1. The merchandise in question consists of glass prisms, identified by manufacturer's item numbers 130 and 131, of various sizes and of two qualities, exported from Czechoslovakia and entered at the port of New York.

2. At the time of exportation of the articles in question, such or similar merchandise was usually and ordinarily purchased in the foreign market for exportation to the United States through a commissionaire, who acted as buying agent for the American importer.

3. For his services in connection with the purchase and exportation of the merchandise, the commissionaire received a commission of 15 per centum of the invoice value.

4. A commission for export services rendered, charged by the manufacturer in sales directly to the American importer without the intervention of a commissionaire, did not accrue until after the merchandise was in condition, packed ready for shipment to the United States.

Accordingly, we hold as matter of law that export value, as that value is defined in section 402 (d) of the Tariff Act of 1930, is the proper basis for appraisement of the instant merchandise, and that such value does not include the item described on the invoice as "15% buying-commission."

The judgment of the trial court is, therefore, affirmed.

Judgment will be entered accordingly.

### DISSENTING OPINION

FORD, Judge: I regret that I am not able to join my associates in holding the item of 15 per centum so-called buying commission, to be a nondutiable item. *Bona fide* buying commissions are ordinarily not dutiable, but it is my view that the so-called buying commission in this case is simply a subterfuge employed for the purpose of circumventing the real market value of the merchandise and to mislead the customs officers.

In collective exhibit 5, the following appears:

The merchandise made by ourselves we shall invoice hereafter as follows:

We are charging the ground prices like on merchandise we are purchasing from manufacturers and add the 15% selling advance separately at foot of the invoice, under the title "15% advance for export service rendered".

This proposition was worked out by our Ministry for foreign trade, who most likely represents the stand-point that the 15% advance for export service rendered is to be considered as a non-duty item and that, therefore, from a custom technical point of view, it will be the same for the American Importer whether he purchases from the manufacturer direct, or through the intermediary of an Exporter.

Collective exhibit 4 contains the following statement:

If a Czechoslovakian manufacturer supplies an importer direct, without the intervention of a commissionaire, he, as a rule, also charges a 15% advance under the title of "15% advance for export service rendered." If, for instance, a chandelier trimming item is sold by the manufacturer in the home market at the price of 100, he will, by transacting the export business direct, have to cover his overhead expenses accruing by the export business, namely in such a way that he puts on the price of 100 at 15% advance for export service rendered. By this selling advance the export overheads of the manufacturer are being covered which, as a matter of fact, are omitted for an inland business.

The following appears in the decision of the trial court:

So far as the shipment in question is concerned, the proof is conclusive in showing that the plaintiff corporation had a commissionaire in the country of exportation, who performed services on its behalf; that the foreign manufacturer of the present merchandise recognized the relationship between the American importer and the commissionaire as that of principal and agent; and that the commissionaire, as a buying agent, received from the importer a commission of 15 per centum, none of which was paid to the manufacturer. I am not willing, however, to accept that procedure which was followed in the particular transaction under consideration to be all determinative of the present issue. There is proof in this case showing that the manufacturer sold direct to American importers without the intervention of a commissionaire and that in such transactions a charge was made "under the title of '15% advance for export services rendered,' " and "By this selling advance the export overheads of the manufacturer are being covered which, as a matter of fact, are omitted for an inland business" (collective exhibit 4, *supra*). At the same time, commissionaires operated in the Czechoslovakian glassware industry, acting on behalf of importers in this country in the purchase, shipment, and payment of merchandise, and for which services the American importer paid a commission. In other words, the combined proof discloses two methods prevailing in the foreign country with respect to the importation of merchandise like that under consideration. Thus, the question for determination is which of the two procedures shall be accepted as the ordinary course of doing business.

This record establishes that the majority of purchases of this and similar merchandise were made through a commissionaire. If we accept the majority of sales of this and similar merchandise as representing the ordinary course of trade and the price which the commissionaire paid to the manufacturer for the merchandise as the price at which *all* those who cared to buy could purchase this merchandise,

this 15 per centum commission is not a dutiable item. The fact is, however, that any and all who cared to buy this and similar merchandise had to pay the manufacturer's price, plus 15 per centum, whether they purchased directly from the manufacturer or through a commissionaire.

The fundamental principle inherent in all the decisions holding a *bona fide* buying commission to be nondutiable is that the purchaser is paying the amount of the commission over and above the amount which he would have to pay if he purchased directly from the manufacturer or other seller. In this case, any and all who purchased this merchandise had to pay the manufacturer's price, plus 15 per centum, either to the manufacturer or to the commissionaire. Therefore, the purchaser who utilized the services of a commissionaire paid exactly the same price he would have had to pay if he purchased directly from the manufacturer. Under such a state of facts, the reason for holding a *bona fide* buying commission to be nondutiable disappears.

For the purpose of establishing the ordinary course of trade, the trial court appears to have relied principally upon the testimony of witness Irving Levin, who stated, in effect, "* * * that business in the country of exportation at the time of shipment of the present merchandise was generally done with small manufacturers whom he characterized as 'small factories, hand workers,' and in such cases a commissionaire was usually employed to take care of the importer's interests."

While it may be true that selling through a commissionaire was in the ordinary course of trade, this record fails to indicate that the manufacturer selling direct to the importer, without the intervention of a commissionaire, was not also in the ordinary course of trade. It is difficult to conceive how except in the case of a restricted market, the purchase of merchandise directly from the manufacturer could be other than in the ordinary course of trade. This record quite clearly indicates that the major portion of sales of this merchandise was made through the commissionaire. The Court of Customs and Patent Appeals has held that the usual wholesale quantity was to be determined by taking the major portion of sales in wholesale quantities. However, thus far this rule has not been extended to and made applicable to finding the ordinary course of trade.

All the manufacturers in a given country might employ a half-dozen methods in offering and selling their products, and the number of offers and sales under each method might be exactly the same. Under such circumstances, any one of such sales might well be considered as being in the ordinary course of trade. On the other hand, 90 per centum of such offers and sales might employ one method and

only 10 per centum employ another method. Yet, there is no reason apparent why each of said methods should not be considered as being in the ordinary course of trade, if, in fact, they were such.

The facts in this case make appropriate the following from *United States* v. *Herrman*, 91 Fed. 116:

> Upon evidence of this kind it was quite competent for the board to conclude that what was called "commissions" was merely an arbitrary item, which really represented a part of the market price of the goods to the ordinary purchaser in the foreign market, that a special discount was allowed to commission merchants, that the real market price of the goods was the price which ordinary purchasers buying of commission merchants were obliged to pay, and that the invoice price was composed of manufacturer's price and discount in order to permit the importer to insist that the item of discount called "commissions" was not a part of the price of the goods, and should be deducted therefrom. In reaching their conclusion as to the dutiable value of the importations, the appraisers did not add to the manufacturer's price the 5 per cent. included in the commission merchants' price, but added 2½ per cent., as representing the fair difference between the manufacturer's price to their agents or commission houses and the ordinary wholesale price or market values between buyers and sellers generally in the foreign market.
>
> \* \* \* \* \* \* \*
>
> It is not a violent presumption that the price actually paid by the importer to those of whom he buys goods in a foreign market, the price which he is willing to pay and freely pays, is the average market price, and not one 5 per cent. higher; and if the appraisers, instead of adding to the invoice price 2½ per cent. as an item "improperly deducted as commission," had added 5 per cent., they would have been quite justified in doing so by the evidence. The evidence before the board of general appraisers impresses us with the conviction that the item of "commissions," so called, is not entitled to cut any figure in the case, except as a trade device to mislead the customs officers, and be made the basis of a claim for a deduction from the real wholesale price.
>
> These considerations lead to a reversal of the decision of the circuit court, and an affirmance of the decision of the board of general appraisers.

The statements contained in the above quotation find support in the following from *Batten & Co.* v. *United States*, 5 Ct. Cust. Appls. 447, T. D. 34975, as follows:

> Actual market value is defined by the several provisions of the customs administrative law and the decisions of the Supreme Court of the United States to be "the price at which the merchandise is freely offered for sale to *all purchasers* in the particular markets of the country of exportation in the usual wholesale quantities, the price which the manufacturer or owner would have received, and was willing to receive, for such merchandise when sold in the ordinary course of trade in the usual wholesale quantities." The evidence in this record discloses that the only price at which these goods could be purchased by all comers, the only price at which they were freely offered for sale in the usual wholesale quantities in the markets of the country of exportation, was and is the price paid by these importers to the commissionaires, including the 2½ percent commission. It would seem, therefore, conclusively established for the purposes of this case that the claimed 2½ per cent commission was not a nondutiable item of commission but was in fact a part of the actual market value of the goods.

Since all who purchased the involved merchandise had to pay the price at which the merchandise was offered by the manufacturer, plus 15 per centum, whether they purchased directly from the manufacturer, or through a commissionaire, the price which *all* had to pay was the price at which it was offered by the manufacturer, to wit, invoice price, plus 15 per centum. Under the facts of this case, I am satisfied that this 15 per centum was not a nondutiable item of commission but was, in fact, a part of the actual market value of this merchandise.

As was stated by this court in *United States* v. *Henry Pollak, Inc.*, 67 Treas. Dec. 1420, Reap. Dec. 3554:

* * * The test to be applied in determining the dutiable status of an item of commission is whether or not the merchandise is freely offered for sale to all purchasers in the ordinary course of trade in the home market at a price not including the commission. Citing *Batten* v. *United States*, 5 Ct. Cust. Appls. 447, T. D. 34975; and *United States* v. *Sanchez*, 15 Ct. Cust. Appls. 443, T. D. 42642.

The majority opinion quotes the following from *United States* v. *International Commercial Co., Inc., et al.*, 28 Cust. Ct. 629, Reap. Dec. 8112, as supporting its holding that the involved 15 per centum so-called commission in this case is a nondutiable item:

Any reading of the provision for export value contained in section 402 (d) of the Tariff Act of 1930 must reveal that the value therein contemplated is for merchandise "in condition, packed ready for shipment to the United States," that is to say, a value including the *per se* value of the goods and only those costs, charges, and expenses which accrue up to the time when the merchandise is in the said condition. Any costs, charges, or expenses, other than the foregoing, even though included in the offered price, are not part of the export value for tariff purposes.

Under ordinary conditions, I accept the foregoing as a sound exposition of the law. However, in a case such as this, where the evidence, in my judgment, shows, that this 15 per centum commission was added as a trade device and to be made the basis of a claim for a deduction from the real wholesale market value, I do not feel that the above decision is controlling.

This so-called 15 per centum commission was an arbitrary item, which really represented a part of the market price of the merchandise to the ordinary purchaser in the foreign market. The real market price of the goods was the price which all purchasers, buying either direct from the manufacturer or through a commissionaire, were obliged to pay. The claimed price was the manufacturer's price when purchased through a commissionaire, the so-called 15 per centum commission being shown on the invoice in order to permit the importer to insist that this item was not a part of the price of the goods and should be deducted therefrom. The evidence in this case impresses me with the conviction that this item of 15 per centum, so-called

commission, is not entitled to consideration in this case, except as a subterfuge to mislead the customs officers and be made the basis of a claim for a deduction from the real market value of the goods.

The majority opinion contains the following:

Plaintiff's exhibit 1 makes it clear that the items of merchandise contained in the shipment at bar were freely offered for sale at the factory, packed ready for shipment to the United States, at the invoice prices. The additional charge did not accrue, or become an element in the price to the purchaser, until after it was known whether the services associated with effecting delivery to the purchaser would be assumed by one other than the seller. If an American purchaser approached a manufacturer in the company of a commissionaire, or indicated that a commissionaire would enter into the transaction, the seller did not include in his price a charge for such additional services. It was only when a manufacturer was called upon to do something more than place his merchandise in condition, packed ready for shipment to the United States; when he was required to undertake the duties of facilitating delivery to the purchaser, that he charged a fee to defray the expenses of such acts.

There is nothing in this record to indicate that any manufacturer was "required to undertake the duties of facilitating delivery to the purchaser." If, and when, a manufacturer did undertake such duties, he, in each instance, charged the purchaser a 15 per centum commission, so that "it will be the same for the American Importer whether he purchases from the manufacturer direct, or through the intermediary of an Exporter." It is my opinion that this item of "15% advance for export service rendered" falls squarely into the category of a seller's commission, and is, therefore, a dutiable item. *Gluck & Son* v. *United States*, 30 Treas. Dec. 355, T. D. 36219. However, whether this "15% advance for export service rendered" be considered as a seller's commission, or otherwise, the fact remains that the price at which all purchasers could buy this merchandise was the manufacturer's price, plus 15 per centum. To hold this so-called buyer's commission paid to the commissionaire in this case to be a nondutiable item, would enable an importer who employs a commissionaire to secure a value for his merchandise 15 per centum lower than an importer who buys direct from the manufacturer. This, I feel, is contrary to all the decisions on the question of buying and selling commissions.

For the foregoing reasons, I respectfully dissent from the conclusions reached by the majority in this case.