(Reap. Dec. 9853)

S. H. Kress & Co. et al. v. United States

Entry No. 2422, etc.

(Decided November 29, 1960)

*Sharretts, Paley & Carter* (*Howard Clare Carter* of counsel) for the plaintiffs.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, trial attorneys), for the defendant.

Wilson, Judge: These are appeals for reappraisement of various items of merchandise, consisting of Christmas tree lights, stem glassware, wooden noisemakers, and toy musical instruments, exported from Japan between August 1949 and August 1951.

All of the consolidated appeals herein, except reappraisements 202392–A, 209875–A, 213117–A, 222739–A, and 223140–A, have been abandoned by the plaintiffs and, accordingly, the issue in this case is directed to these five appeals.

With the exception of the merchandise covered by reappraisement 209875–A, the merchandise was invoiced and entered under duress

pursuant to section 503 of the Tariff Act of 1930 on the basis of its export values at unit prices, packed, ex-factory (or first cost) and was appraised on the basis of export values at f.o.b. prices equivalent to the ex-factory prices, plus the *pro rata* share of the items of buying commission and inland freight and other charges. In reappraisement 209875–A, the invoiced and appraised values were the f.o.b. Yokohama prices. Entry was made under section 503, *supra*, on the basis of the ex-factory prices (plaintiffs' exhibit 4).

Plaintiffs herein claim that the invoice unit ex-factory or "first cost" prices represent the export values for the merchandise, as defined in section 402(d) of the Tariff Act of 1930, specifically contending that certain charges for inland freight, storage, insurance, haulage and lighterage, and commissions included in the appraised values should be deducted in the determination of the correct dutiable values for the goods.

The evidence herein includes an affidavit with attachments executed under date of May 21, 1959, by Mr. Tatsuo Nakamura, director of Fuji Trading Co., Ltd., of Tokyo, the shipper of the involved merchandise (plaintiffs' collective exhibit 1) ; photostat copy of commercial invoice with attachments thereto relative to merchandise covered by reappraisement 223140–A (defendant's collective exhibit A (R. 25)) ; photostat copy of commercial invoice with attachments covering merchandise involved in reappraisement 209875–A (defendant's collective exhibit B (R. 33)) ; photostat copy of a certain agreement between plaintiffs and the shipper herein, the latter referred to as the "Commissionaire" (plaintiffs' collective exhibit 2), together with a supplementary agreement with schedule of rates of buying commission (plaintiffs' exhibit 3) ; specification sheet showing alleged ex-factory price of the merchandise covered by reappraisement 209875–A (plaintiffs' exhibit 4 (R. 38) ).

Mr. Nakamura, the affiant in plaintiffs' collective exhibit 1, stated that his company had acted as buying agent for the plaintiff since 1949, and that, in such connection, he had placed orders with various manufacturers for delivery of merchandise upon instructions from his principal; that he was thoroughly familiar with the prices and terms at which these manufacturers offered such merchandise for sale at all times since 1949; that all of such manufacturers freely offered and sold merchandise identical or substantially similar to that imported, without any restrictions as to resale price, disposition, use, or in any other respect, all of such sales having been made at an ex-factory price; that the charges arising after the merchandise leaves the factory are paid for by the purchaser or his agent, the price for such goods not varying with the quantity purchased; that the Tokyo-Yokohama area is the principal market of Japan for the sale of

merchandise such as that in question for exportation to the United States.

Mr. Nakamura further stated that, in preparing invoices to accompany the shipments, he sometimes prepared an invoice which showed the f.o.b. price of the merchandise, arrived at by adding the purchasing commission and charges actually incurred in bringing the merchandise from the factory to the exporting vessel, and that on other occasions he indicated on the invoice the ex-factory price actually paid for such merchandise, together with separate enumerations of the amount of the buying commission and the amount of each of the inland charges. Specimen invoices illustrating both methods of invoicing are attached to plaintiffs' collective exhibit 1. He asserted that the purchasing commission was paid for his company's services in placing the order, inspecting the finished merchandise, preparing shipping documents, and arranging for exportation of the goods.

There was further introduced in evidence the testimony of Mr. Emil Treuse, "Supervisor of the Import Clerical Section" of the plaintiffs' concern, who described the relationship between the plaintiffs and Fuji Trading Co., Ltd., of Tokyo, as a "purchaser-buying agent relationship" under a written agreement (R. 6). This so-called "original" agreement (plaintiffs' collective exhibit 2) is dated July 20, 1949. At page 3 thereof, appears the following notation: "To be agreed upon after abolishment of present SCAP regulations of including commissions in f.o.b. price." The schedule of "Rate of Buying Commission" (letter No. 319) (plaintiffs' collective exhibit 3) is dated October 30, 1951.

Mr. Treuse also testified that "commissions as such were in existence at all times, excepting there was no purpose in quoting them in the body of the original agreement, since SCAP regulations didn't permit us or the commissionaire to show them in the body of the consular invoices. They had to be included in the quotations" for the merchandise (R. 8–9). Reference to the agreement (plaintiffs' collective exhibit 2) entered into between the plaintiffs and the Fuji Trading Co., Ltd., indicates the following: "Commissions Agreed Upon Are As Follows: To be agreed upon after abolishment of present SCAP regulations of including commissions in f.o.b. price." On cross-examination, Mr. Treuse testified that his company had been paying commissions to Fuji Trading Co., Ltd. prior to the "supplemental agreement" with said shipper and that the buying commission and other charges, including the actual cost of the merchandise, was included in one unit price (R. 15). He further stated that his company had completed the commission payments to its purchasing agent prior to the date of the aforesaid supplemental agreement covering all purchases before that time—in other words, that his company had paid for the mer-

chandise invoice by invoice at the time the merchandise was received, or had issued letter of credit for it at that time (R. 18).

Certain copies of original purchase contracts with the "Commissionaire," Fuji Trading Co., Ltd., Tokyo, Japan (defendant's collective exhibits A and B, *supra*), covering certain of the importations here involved, were produced by plaintiffs' witness. Specifically, with reference to entry 6785 covered by reappraisement number 209875-A, order 8210 (defendant's collective exhibit B) discloses a price for the involved merchandise of $1.10 per dozen, which the witness stated was the price f.o.b. Yokohama (R. 29–30). The invoice prices stated on said entry 6785 are also given as $1.10 per dozen on the basis of unit f.o.b. Yokohama (R. 30). Mr. Treuse testified that included in the unit cost were case and packing charges, inland freight, insurance premium, hauling and lighterage, and storage (R. 31). Said order 8210 does not indicate that the unit invoiced prices for the merchandise therein involved include buying commission. On the contrary, the purchase order in question does state under the heading commission: "None %."

Defendant's collective exhibit A, which is applicable to the merchandise covered by reappraisement 223140–A, includes copy of an original foreign invoice (No. 153) signed by Fuji Trading Co., Ltd., which lists the unit cost of the merchandise covered thereby. Order No. 8475 included in said exhibit lists the unit price, namely, $0.48 per dozen, the same as appears on the foreign invoice, representing the f.o.b. price Yokohama, Japan (R. 24). The order in question also provides that no commission was to be paid. The same situation respecting commissions appears with respect to order No. 8464 and order No. 8402 also involved in reappraisement 223140–A. The papers included in defendant's collective exhibit A are representative of all the appeals wherein the invoice is on a "first cost" basis (R. 40).

The issue here is whether the so-called inland charges and certain items claimed as buying commissions are properly a part of the dutiable value of the involved goods. This court and our appellate court have on numerous occasions passed upon the question whether certain charges and claimed buying commissions were to be included in the ascertainment of the dutiable value of imported merchandise. Certain of these decisions which are pertinent to the present determination are here referred to.

In *United States* v. *Paul A. Straub & Co., Inc.*, 41 C.C.P.A. (Customs) 209, C.A.D. 553, our appellate court had before it the question of whether inland freight from the principal market to the port of embarkation formed a part of the export value of certain decorated china ornaments exported from Germany. In holding that such a charge was a part of the export value of the goods, the court therein emphasized the fact that all sales and offers for sale of such or similar

merchandise were made at f.o.b. port of exportation prices and no sales or offers for sale were ever made on an ex-factory basis at prices which did not include inland freight.

In the case of *United States* v. *Dan Brechner et al.*, 38 Cust. Ct. 719, A.R.D. 71, the court held that where various items of merchandise were freely offered for sale in Japan for export to the United States at ex-factory, or first cost prices, to which were added by the purchaser's buying agent certain so-called export charges, such as inland freight, etc., said export charges formed no part of the export value of the involved merchandise. Our appellate division, in its decision therein, was of the opinion that the appraiser's return of value was an appraisement at invoiced first cost or *per se* prices, plus packing, plus the disputed items for commission and export charges.

In the *Brechner* case, *supra*, the court stated the issue as follows: "Was the merchandise at bar offered for sale on an ex-factory basis at prices which did not include these additional charges?" and, in that connection, commented:

> * * * Except for the period of control exercised by SCAP and Boeki-Cho, which control terminated before any of the exportations at bar occurred, appellees most assuredly were able to buy their merchandise in that manner. It was the usual, common practice for them to do so. Since ex-factory sales, exclusive of export charges have been shown, those charges form no part of the value of the instant merchandise, * * *.

In the case at bar, however, it appears that the involved exportations were made during the period within which SCAP regulations—which did not permit foreign suppliers to quote other than including their commission (R. 9)—were still in effect.

In *Valley Knitting Co., Inc., et al.* v. *United States*, 44 Cust. Ct. 599, Reap. Dec. 9627, decided March 8, 1960, the involved articles were appraised at their respective invoice unit values, net packed. The court therein held that certain charges for inland freight, storage, insurance, hauling, and lighterage included in the invoice unit values, were part of the export value of the involved merchandise, concluding that the statutory values were as found by the appraiser.

The court, in the *Valley Knitting Co.* case, *supra*, held that the principles of the *Brechner* case, *supra*, did not apply and, in such connection, commented as follows:

> In the different method of invoicing, lies the essential distinction between this and the *Brechner* case, *supra*. There, it will be recalled, each of the invoices showed an ex-factory or first-cost price which, it was held, the appraiser adopted as the *per se* unit price. Because of this method of appraisement, a presumption of correctness attached to those unit prices which obviated the need for proof of ex-factory prices at which the merchandise was freely offered for sale to all purchasers in the usual wholesale quantities and in the ordinary course of trade in the principal markets of the country of exportation.
>
> In the instant case, appraisement was made at the invoice unit values net packed. This was an indivisible unit value which presumptively included all

charges and was not susceptible of being broken down into components of ex-factory costs, plus export charges, so as to permit the challenging of one or more elements of the appraisement while relying upon the presumption of correctness of the appraiser's return as to any unchallenged items. Accordingly, it was incumbent upon the plaintiffs, not only to establish that the appraiser's action was erroneous, but to prove affirmatively every material element in the basis of value upon which they rely. *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C.C.P.A. (Customs) 36, T.D. 43324; *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495.

\* \* \* \* \* \* \* \*

\* \* \* "There is no showing of record of separate unit prices for the goods and separate unit freight charges per unit of merchandise." *United States* v. *Paul A. Straub & Co., Inc., supra.* Without such evidence, there are no figures which will enable the court to find an ex-factory price for each of the several items of merchandise covered by these importations.

Plaintiffs, in their memorandum in support of the contention that Fuji Trading Co., Ltd., was the buying agent for the importer, point out that the consular invoices in reappraisements 222739–A and 223140–A contain sworn declarations that Fuji Trading Co., Ltd., is the shipper and not the seller of the merchandise. However, defendant's collective exhibit A, involving merchandise covered by reappraisement 223140–A, includes an original foreign invoice signed by Fuji Trading Co., Ltd., which provides that no commission was to be paid. Likewise, in reappraisement 222739–A, no commission is indicated. Relative to merchandise covered by reappraisements 202392–A, 213117–A, and 209875–A, are declarations signed by S. Ishikawa and T. Kumura of the Fuji Trading Co., Ltd., the so-called buying agent on the back of the pertinent consular invoices stating in effect that Fuji Trading Co., Ltd., was the seller of the merchandise covered thereby and not the commissionaire. As theretofore indicated, the so-called "SCAP" regulations did not permit foreign suppliers to quote other than including their commissions. The so-called supplementary agreement between Fuji Trading Co., Ltd., and the plaintiffs states as follows:

P.S. Please understand that until the time when the present SCAP regulation will be abolished, our offered prices include our commission at the above mentioned rates. [Plaintiffs' exhibit 3, page 2.]

In none of the consular or commercial invoices here is a charge for commission shown. There is nothing in this record of sufficient probative value, in my opinion, to establish a purchaser-buying agent relationship between the plaintiff herein and Fuji Trading Co., Ltd.

Whether the so-called inland charges should or should not be included in the "value" of the merchandise, depends upon how the involved merchandise was offered and sold, that is, whether it was offered for sale only at f.o.b. prices port of embarkation, as defendant contends, or at ex-factory prices, as contended by the plaintiffs. The record discloses that the merchandise covered by reappraisements

202392–A, 213117–A, and 209875–A was offered and sold to the purchaser herein at the invoice unit values and the terms of sale are shown to be f.o.b. Yokohama. There is no evidence to establish that the merchandise covered by these three appeals was freely offered or sold at prices which did not include the claimed export charges. The situation in this regard, as disclosed by the manner of invoicing the merchandise involved in the above three appeals, parallels that which obtained in the *Valley Knitting Co.* case, *supra*, and warrants, in my opinion, a conclusion to the same effect regarding such export charges as were made by the court in the latter case.

With respect to the merchandise covered by reappraisements 222739–A and 223140–A, the original foreign invoice signed by Fuji Trading Co., Ltd., included in defendant's collective exhibit A herein, lists the unit cost of merchandise covered by said reappraisement 223140–A and designates delivery of the goods as f.o.b. Yokohama. Further, the invoices covering the merchandise involved in the above appeals indicate that there were a number of sellers of the merchandise covered thereby. There is no evidence in this record to establish the price at which these sellers freely offered this merchandise for sale for exportation to the United States to all purchasers, a burden imposed upon the plaintiffs herein under the statute. In the absence of such showing, the presumptively correct values found by the appraiser must stand. *Harry Garbey* v. *United States*, 24 C.C.P.A. (Customs) 48, T.D. 48332.

Unlike the circumstances that obtained in the *Brechner* case, *supra*, the appraiser in the case at bar did not adopt ex-factory prices as the *per se* unit value of the merchandise. The plaintiffs must not only establish that the appraiser's action was erroneous, but must prove affirmatively every material element in the basis of value upon which it relies. *Brooks Paper Company* v. *United States*, 40 C.C.P.A. (Customs) 38, C.A.D. 495. In this connection, the statement contained in the affidavit of Mr. Nakamura (plaintiffs' collective exhibit 1) that the manufacturers freely offered such or similar merchandise to all purchasers and at ex-factory prices, standing alone and unaccompanied by evidence of sales or pricelists or other factual data, is but a conclusion of the affiant which possesses no evidentiary value. *Kobe Import Co.* v. *United States*, 42 C.C.P.A. (Customs) 194, C.A.D. 593.

As was stated by the court in the *Valley Knitting Co.* case, *supra*:

* * * although both the witness for the plaintiffs and the affiant stated that ex-factory prices were agreed upon with the manufacturers, and it is further stated in the affidavit that the manufacturers freely offered their merchandise for sale to all purchasers, without restriction and without quantity variations, there is not a scintilla of evidence in the record to show that those ex-factory prices were, nor whether ex-factory prices were the same for all purchasers.

The above observation may be applied with equal force to the situation in the case at bar.

Based upon the foregoing considerations, I find as facts:

1. That the merchandise consists of Christmas tree lights, table glassware, wooden noisemakers, and toy musical instruments exported from Japan during the period commencing July 30, 1950, and ending August 13, 1951.

2. That the merchandise in question was freely offered for sale in the ordinary course of trade in the principal markets in Japan for exportation to the United States in the usual wholesale quantities, plus packing, on or about the dates of exportation of the involved merchandise.

3. That, as expressed in the invoices covering the merchandise represented by reappraisements 202392–A, 213117–A, and 209875–A, the merchandise was offered and sold to the purchaser herein at the invoice unit values, the terms of sale being f.o.b. port of exportation.

4. That, as to the merchandise covered by reappraisements 222739–A and 223140–A, there is no evidence to establish a value for the merchandise covered thereby other than the appraised values.

5. That there is no evidence of the absence of a foreign value, as provided in section 402(c) of the Tariff Act of 1930, as amended, for the merchandise in the appeals involved herein, nor that the foreign value, if any, was higher than the export value, section 402(d), Tariff Act of 1930.

I conclude as a matter of law:

1. That the statutory presumption of correctness attaching to the appraiser's return of values for the merchandise covered by these appeals to reappraisement has not been overcome.

2. That the export value, as that value is defined in section 402(d) of the Tariff Act of 1930, is the proper basis for the determination of the value of the merchandise covered by the involved appeals.

3. That such value is the appraised value in each case.

4. The appeals having been abandoned insofar as they relate to all other merchandise, to that extent, the appeals are hereby dismissed.

Judgment will be entered accordingly.