(Reap. Dec. 11141)

SHALOM & CO. *v.* UNITED STATES

Entry No. 877051.

(Decided February 14, 1966)

*Lane, Young & Fox* (*William Whynman* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Charles P. Deem,* trial attorney), for the defendant.

FORD, Judge: This appeal for reappraisement raises the question of whether a certain invoiced buying commission is properly part of the dutiable value of 1,000 sets of "No. 0/40481 'Fleetwood' Brand Model NTR–800.8-Transistor 2 band radio with leather case, earphone, battery & rod antenna," which were exported from Japan on October 29, 1962.

Appraisement was made at $9.555 per set, net packed, on the basis of export value under the provisions of section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, and T.D. 54521.

The commercial invoice shows an aggregate of $8,920 for the 1,000 sets, at an "ex-factory" price, and charges for inland freight, insurance premium, storage, hauling and lighterage, as well as petties, aggregating $180. Those items are not included in the above total, thus making a total of $9,100 on an f.o.b. basis. To that sum the invoice shows an addition of "5% Comm. on F.O.B.," of $455, making a final total of $9,555.

It is clear from the official documents, which have been received in evidence without being specifically marked, that the appraiser disallowed all invoiced inland charges and the 5 percent commission in arriving at the unit invoice value per radio.

Plaintiff's appeal is limited to the inclusion of said 5 percent commission, claiming it is a *bona fide* buying commission, and, as such, not a part of the dutiable value.

Defendant contends for the appraised value, claiming it to be a nonseverable appraisement.

The only evidence adduced is that by plaintiff's witnesses, Sam Lustig, a customs examiner, and Victor Shalom, a partner of the plaintiff firm, and an agreement received as plaintiff's exhibit 1.

Mr. Lustig testified under subpoena, that he passed on the instant invoice; that his writing appears thereon in red ink; that he suggested an appraised value of $9.555 each, net packed; that it included 5 percent commission and all charges; that he concluded the proper export value was $9.555 per set, which included the proportionate share of the item of $455 stated on the invoice.

Defendant's counsel conceded the examiner's action was adopted by the appraiser.

Mr. Shalom testified that he is general manager and buyer for plaintiff which purchases electronics and sundries; that he travels to Japan and Hong Kong and there purchases for his firm's account; that he placed the order for the instant merchandise after samples were submitted by "Our Commission agent, Hillel Tsusho Co., Ltd.," Tokyo (hereinafter referred to as Hillel). Hillel purchases for the account of Shalom & Co. as its "buying agent." Mr. Shalom approved the samples and placed an order for 1,000 sets by either cable, mail, or telephone. The agent must keep plaintiff posted as to market conditions and prices and forward samples from time to time. When orders are placed with the agent, the latter arranges delivery dates, inspects the merchandise, and arranges for shipment. While Mr. Shalom is in Japan he contacts Hillel, the buying agent, and together with a member of Hillel's staff who speaks Japanese and English, he interviews manufacturers. He has an arrangement with Hillel for commission for services of 5 percent to be paid on the f.o.b. price.

Mr. Shalom identified a paper designated "AGREEMENT," and stated it is the buying agreement between plaintiff and Hillel, and that it became effective March 1, 1962. It was still in effect, and was in effect at the time of placing the order as well as on the date of shipment.

Mr. Shalom also testified he has had correspondence with Hillel and is satisfied the agreement contains their official signature. The agreement refers to the 5 percent commission described on the invoice in the case.

The said agreement, plaintiff's exhibit 1, states that Shalom & Co. appoints Hillel as buying agent in Japan; that it is not an exclusive agency; that Hillel must visit manufacturers in Japan, collect and submit samples to Shalom & Co., report regularly about the market

situation, and quote prices at which merchandise can be purchased; that Hillel was to place orders with the manufacturers upon instructions from plaintiff, inspect merchandise, and arrange shipment.

The buying commission for Hillel is stated as 5 percent. Hillel is to submit the f.o.b. Japanese port cost in United States dollars which shall include their buying commission. The consular and commercial invoices are to be made out in United States dollars on ex-factory price, specifying all charges, such as packing, inland freight, insurance to steamer, storage, hauling and lighterage, other charges, as well as the buying commission. The agreement is stated to be in effect as of March 1, 1962, and shall continue until 1 year after written notification by one of the parties that they desire to discontinue the agency. "The Buying Agent shall have no authority to bind Messrs. Shalom & Co. except upon written order or authorization by Messrs. Shalom & Co."

In *Haddad & Sons, Inc.* v. *United States*, 53 Cust. Ct. 423, Reap. Dec. 10825, which concerned buying commission as well as certain inland charges in connection with numerous importations of brassieres from Hong Kong, this court stated, page 425:

*Bona fide* buying commissions do not constitute part of the value of merchandise for appraisement purposes. *United States* v. *Nelson Bead Co.*, 42 CCPA 175, C.A.D. 590; *United States* v. *Gitkin Co.*, 46 Cust. Ct. 788, A.R.D. 132. Whether a buying commission is *bona fide* depends upon the facts in each case. In the instant case, in addition to the affidavit of the president of The Tosho Co., Ltd., received in evidence as plaintiff's exhibit 1, the testimony of Mr. Haddad was adduced confirming the functions of The Tosho Co., Ltd., and the procedure followed by him on his various trips to Hong Kong for the purpose of buying merchandise. The record satisfactorily establishes that The Tosho Co., Ltd., was in fact a *bona fide* buying agent of the importer herein. It has also been established that the commission amounted to 5 percent of the invoiced price. Accordingly, charges of 5 percent of the invoiced prices representing buying commissions are not properly a part of the dutiable value for appraisement purposes.

The foregoing is apropos to the facts in the case at bar. In addition to the agreement, exhibit 1, the uncontradicted testimony of Mr. Shalom was adduced confirming the contractural functions of Hillel, and the procedures Hillel took under the terms of the agreement, which, on the record, have been substantially performed. The invoices show the ex-factory price, a breakdown of the costs, the amount for the various charges and the item of 5 percent commission which is shown as 5 percent of the f.o.b. price of $9,100 or $455. A confirmation by Hillel on its stationery is part of the official entry papers and it confirms the price per set of $8.92, the f.o.b. net price of $9,100 and the 5 percent commission thereon of $455, as well as the overall total of $9,555. It is signed by Hillel, "For Seller."

The commercial invoice is on the stationery of Shiro Trading Co., Ltd., Tokyo, Japan. The "Special Customs Invoice" shows the name of "New Hope Industrial Co., Ltd. Osaka," as seller. The "Purchase Declaration" thereon is in the name of Shiro Trading Co., Ltd. The testimony does not explain the interest of the various firms above named in this transaction. However, it is evident from those documentations and the testimony and exhibit 1 that Hillel made the purchase on behalf of Shalom & Co. from New Hope Industrial Co., Ltd., and also arranged for shipment by Shiro Trading Co., Ltd.

There is no doubt on the record, especially by the testimony of the examiner, that the appraisement included the sum of $455 invoiced as commission for Hillel at 5 percent of $9,100. The testimony of Mr. Shalom, supplemented by the agreement with Hillel in evidence as exhibit 1 satisfactorily establishes such commission as a *bona fide* buying commission. *Haddad & Sons, Inc., supra*, and cases cited therein.

Defendant's brief asserts that inquiry into the examiner's mental processes in arriving at the appraised value was "clearly improper," citing *Muser* v. *Magone*, 150 U.S. 240; *Raylite Trading Co., Inc., et al.* v. *United States*, 37 Cust. Ct. 492, Reap. Dec. 8634, affirmed, 38 Cust. Ct. 753, A.R.D. 76; and *Henry Wedemeyer* v. *United States*, 27 Cust. Ct. 449, Reap. Dec. 8051.

In *Muser* v. *Magone, supra*, at page 251, the court stated that the record did not indicate that the general appraiser did not endeavor by all reasonable ways and means to arrive at the true value and actual market value; that among such ways and means are market price or quotations for a given day, amounts realized on sales, public and private, and in some instances the cost of production; that the course of business in respect to the embroideries there involved was peculiar, and to reach a result, in estimating the value, required consideration of many elements making up the amount which actually represented the pecuniary basis of transactions. The court stated:

How these various elements impressed the general appraiser, and what grounds influenced or controlled his mental process, were matters in respect of which he could not be interrogated, since his decision when approved by the collector, was final and could not be reviewed and the verdict of a jury substituted.

The court further stated that "* * * their decision could not be impeached by requiring them to disclose the reasons which impelled their conclusions or by proving remarks they may have made in the premises."

The inquiry in the case at bar was merely to ascertain the facts relating to the appraisement. It did not concern how certain elements impressed the witness or the appraiser in adopting the examiner's

action; nor the grounds which influenced or controlled his or their mental processes; nor was inquiry addressed to the reasons which impelled the conclusions arrived at, but merely whether the commission was included within the appraisement.

The trial court in the *Raylite* case, *supra*, cites *Muser* v. *Magone* and quotes a portion of the above quotation from said case. The *Wedemeyer* case, *supra*, also cites *Muser* v. *Magone*, and the court stated that "* * * the appraiser is not subject to examination as to the reasonable ways and means which he employed in finding a value for such imported merchandise." We do not consider that these cases support defendant's inferences as to improper inquiry into the examiner's mental processes in arriving at the appraised value in this case.

Defendant's brief also contends that the appraisement, expressed "as a unit total," is not susceptible of severance, citing *S. H. Kress & Co. et al.* v. *United States*, 45 Cust. Ct. 566, Reap. Dec. 9853. *Cf. Valley Knitting Company, Inc.* v. *United States*, 44 Cust. Ct. 599, Reap. Dec. 9627.

In *Kress*, *supra*, the invoices showed either no commission was to be paid, or did not show an item for commission or that one was charged. In *Valley*, *supra*, the unit invoice price included charges and commissions. In the instant case, the invoice shows a charge for commission and that such charge is not included in the invoiced unit price.

We believe that the record amply establishes, as a fact, that the commission shown on the invoice as 5 percent is a *bona fide* buying commission, "pure and simple, and in no wise entered into the actual market value of the goods. It is therefore a non-dutiable item" as stated by the court in *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T.D. 31007.

Based upon the foregoing considerations, I make the following findings of fact:

1. The merchandise covered by the instant appeal for reappraisement consists of 1,000 sets of "Fleetwood" brand radios which were exported from Japan on October 29, 1962.

2. That the merchandise was appraised at a *per se* unit price of $9.555 per set, net, packed, which included a proportionate share of an item invoiced as "Commission FOB $455.00."

3. That on or about the date of exportation of said radios, such or similar merchandise was freely offered for sale in accordance with the provisions of section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

4. That Hillel Tsusho Co., Ltd., Tokyo, Japan, performed services for plaintiff as an agent in buying the imported merchandise and was entitled to a commission of 5 percent of the f.o.b. invoiced price of $9,100 amounting to $455.

I, therefore, conclude as a matter of law:

1. That export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis of appraisement.

2. That the buying commission of Hillel Co., Ltd., of 5 percent of the total invoiced f.o.b. price of $9,100 is not properly part of the dutiable value.

3. That the appraised value of the imported radios, less the buying commission enumerated in finding No. 4, is the proper dutiable value of the merchandise.

Judgment will be entered accordingly.