(Reap. Dec. 8175)

NELSON BEAD CO. v. UNITED STATES

Entry No. 758543.

(Decided November 20, 1952)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Chauncey E. Wilowski*, special attorney), for the defendant.

OLIVER, Chief Judge: In this appeal for reappraisement, the merchandise consists of glass prisms, identified by manufacturer's numbers 130 and 131, which are recognized as standard items in the glassware industry in Czechoslovakia, the country of exportation of the present merchandise. The articles in question were ordered in October 1946, and were shipped the following month. Entry was made at the port of New York in January 1947.

The sole question before me is whether an item described on the invoice as "15% buying-commission" is part of the value of the present merchandise for tariff purposes. This item does not apply to sales for home consumption in Czechoslovakia. Accordingly, the sole question is whether or not the item is a part of export value, section 402 (d), Tariff Act of 1930. The limited issue brings into application the well-established principle that when, as here, only one item of an appraisement is challenged, the presumption of correctness as to all others is not destroyed and, therefore, they stand as presumptively correct. *United States* v. *Fritzsche Bros., Inc.*, 35 C. C. P. A. (Customs) 60, C. A. D. 371.

Plaintiff claims that said invoice item is a buyer's commission paid for services rendered in connection with the buying, inspecting, and shipping of glass prisms like those in question and, therefore, should not be included in determining statutory export value, section 402 (d), *supra*. Defendant, on the other hand, contends that the invoice item is not, in fact, a buying commission and that it is part of the market value for tariff purposes.

The witnesses for both sides are either officers or directors of the Czecho-Slovak Crystal Importers Association, Inc., of New York City.

Plaintiff's proof, consisting of the testimony of two witnesses and two affidavits, exhibits 1 and 2, supports the following summation.

The president of the importing corporation testified that during his experience of more than 30 years in the importation of lighting glassware, including prisms, he has been to Czechoslovakia where he visited factories for the purpose of purchasing merchandise like that under consideration, his latest visit to that country having been during November and December 1945. He testified that it has been his general practice, throughout all of his experience, in the purchase of glass prisms the same as those in question, to "go to a commissionaire and tell him my wants and he takes me around to different factories. I make my deal with the factory and agree on the prices and the commissionaire takes care of the rest of it as far as the examining, shipping, clerical work for which he gets 15%." The method of doing business remained the same from July 1946, through December 1946.

During the course of cross-examination, the witness identified an invoice, dated September 16, 1946 (defendant's exhibit 3), as covering an importation from Czechoslovakia by plaintiff of several items, including glass prisms. Examination of that invoice discloses an allowance of "13% rebate" on the glass prisms, and an addition of "15% buying commission." The record shows that the said invoice relates to merchandise that "has not been appraised as yet." It should be noted that the shipment covered by the invoice, exhibit 3, *supra*, came from Leder Bros. of Jablonec, Czechoslovakia, who is neither the manufacturer nor the shipper of the present merchandise.

Plaintiff's second witness is an importer and manufacturer of crystal ware who has been purchasing glass prisms in Czechoslovakia since 1945, and who, at the time of exportation of the articles in question, purchased such merchandise in the country of exportation. His testimony concerning the procedure followed in purchasing merchandise like that in question is corroborative of that previously offered. Following is an excerpt of the witness' testimony on the point (R. 20 and 21):

Q. And will you please describe to the Court how you conducted your business in buying this merchandise in the Czechoslovakian market?—A. Well, when I arrived in Czechoslovakia I went to the town of Gabloz and met my commissionaire and told my commissionaire the type of merchandise I wanted and he took me to the various factories that made this type of merchandise and the merchandise that I wanted I told my commissionaire to place an order. He got an order out on his order copy and I signed it and one copy was given to me and one delivered to the factory and one copy the commissionaire kept.

Q. Did you pay your commissionaire for his services?—A. Yes, I did. All these invoices and prices actually were paid to the factory only and when the commissionaire billed the goods he added on his 15% commission for his services.

CHIEF JUDGE OLIVER: Whom did you pay for this merchandise, the commissionaire or the factory direct?

WITNESS: The commissionaire.

Q. And is that the way business is done as far as you know?—A. Yes.

On cross-examination, the witness admitted that he never made any attempt to buy direct from a manufacturer and, therefore, was unable to say whether purchases were actually made in that way.

The manager of the foreign manufacturing company executed an affidavit, exhibit 1, in which he testified that the shipper, A. & H. Juppe of Jablonec, Czechoslovakia, of the present merchandise to the importing corporation, has always been recognized by the foreign manufacturer as a buying agent, and not as a buyer, for the American importer, and that the manufacturer, pursuant to instructions from the American importer, packs the merchandise ready for shipment to the United States and then forwards it to the said shipper "for inspection and for the preparation of consular invoice and other shipping documents"; that for such services the shipper receives from the plaintiff corporation a commission of 15 per centum; that no part of said commission is paid to the manufacturer; and that at no time did the shipper receive any fee or compensation with respect to the transaction from the manufacturer.

Corroborative of the foregoing testimony from the foreign manufacturer is the affidavit, exhibit 2, executed by a member of the said shipping firm, A. & H. Juppe, who testified that his company acted "solely as buying agents" for the American importer, and that in such capacity the only compensation received was the "15% per commission appearing on the said invoice."

Defendant's contention is expressed in counsel's brief as follows:

The defendant contends that the full prices paid to the commissionaire by the importer, less non-dutiable charges, represent the correct dutiable value and that the 15% charged by the commissionaire is *not* a buying commission, but is in fact, a discount, or rebate, which the commissionaire was able to get from the manufacturer. Furthermore, the charge of 15%, made by the commissionaire, was an expense incident to the placing of the merchandise in condition ready for shipment to the United States. It was an expense paid by the importer, and therefore, became a part of the dutiable export value of the merchandise. Everyone had to pay this 15% charge, whether or not it was bought directly from the manufacturer. No one was able to buy the glass prisms without this 15% payment. [Italics quoted.]

The testimony of five witnesses and documentary proof were offered to support such contention. Following is a review thereof.

Irving Levin, secretary and treasurer of the Czecho-Slovak Crystal Importers Association, Inc., testified that, at the request of the United States examiner of the merchandise in question, he communicated with the Economic Group of the Glass Industry of Czechoslovakia to obtain information concerning prices of glassware. He

identified a series of letters, defendant's collective exhibit 4, resulting from such request. The substance of that correspondence is contained in a letter, dated June 24, 1947, from the said Economic Group of the Glass Industry of Czechoslovakia, wherein it is stated that during the first 6 months of 1946 the "preponderate majority of Czechoslovakian firms \* \* \* included in their prices the 15% buying commission," and that beginning in July 1946, arrangements were made to invoice that separately "for the reason because this way of invoicing was also customary in our industry prior the war." Answering certain questions which had been asked by the United States Appraiser, the said letter further states that manufacturers, if they so desire, are allowed to sell direct to importers without the intervention of a commissionaire, and then presents the following explanation:

> If a Czechoslovakian manufacturer supplies an importer direct, without the intervention of a commissionaire, he, as a rule, also charges a 15% advance under the title of "15% advance for export service rendered." If, for instance, a chandelier trimming item is sold by the manufacturer in the home market at the price of 100, he will, by transacting the export business direct, have to cover his overhead expenses accruing by the export business, namely in such a way that he puts on the price of 100 a 15% advance for export service rendered. By this selling advance the export overheads of the manufacturer are being covered which, as a matter of fact, are omitted for an inland business.

Cross-examination of the witness disclosed that he has been engaged in the lighting glassware business for 30 years and that he has been buying glass prisms during that period. Referring particularly to the months of May, June, and July 1946, the witness explained his method of doing business in the foreign market. Such testimony, showing that he dealt with a commissionaire, is in line with similar proof offered by plaintiff. Further testimony is in the nature of a reason for his method of doing business, which he stated in this way:

> Well, due to the fact that my business is generally done with small manufacturers—probably bought from seventy-five to one hundred different people—I always went to a commissionaire and have him take care of our interests in that area. We went there either in person and placed orders direct with the manufacturers through a commissionaire or mailed or cabled orders to the commissionaire requesting him to place those purchases with the best possible manufacturer based on his ability to deliver the best kind of merchandise at the price and he would then place the orders with the various manufacturers and subsequently make shipment of the goods and pay the manufacturer out of the credits issued.

The manufacturers with whom the witness dealt were "small factories, hand workers."

The witness made reference to purchases direct from a manufacturer, but such transactions occurred in 1948, too remote from the time of exportation of the present shipment to be of evidentiary value in this case.

Isaac Albert, president of the said Czecho-Slovak Crystal Importers Association, Inc., identified two letters, dated July 2, 1946, and November 25, 1946, respectively (defendant's collective exhibit 5), from A. Schonbek & Co. of Smrzovka, Czechoslovakia, who is a manufacturer of glassware as well as a commissionaire. The letter, dated July 2, 1946, explains that on invoices covering merchandise manufactured by A. Schonbek & Co., itself, the "15% selling advance" appears at the foot of the invoice "under the title '15% advance for export service rendered,'" and, with respect to merchandise purchased from others and shipped to American importers, there appears separately on the invoice "a commission of 15%." The procedure was worked out by the Ministry for Foreign Trade in Czechoslovakia with the view of having "the 15% advance for export service rendered" considered by United States Customs as nondutiable, whether the American importer purchases from the manufacturer direct, or through the intermediary of an exporter. The letter, under date of November 25, 1946, included in said collective exhibit 5, confirms what is stated in greater detail in the earlier one just outlined.

The witness testified that the said A. Schonbek & Co. is a manufacturer of complete chandeliers, but is a commissionaire in transactions dealing with glass prisms, and that he dealt with "Mr. Schonbek" exclusively as a commissionaire who made selections of merchandise, placed orders at different factories, checked and packed shipments, and made payments. Referring to the general or usual method of doing business in Czechoslovakia, the witness stated that all transactions, except for an isolated instance, are handled through a commissionaire and that such condition has been true over a period of 35 years.

Walter J. Abels, an importer of glassware, identified two invoices, one (exhibit 6) covering glass prisms from the manufacturer of the present merchandise, and the other (exhibit 7) relating to a shipment of similar articles from the said A. Schonbek & Co. Both documents substantiate previous proof to the effect that merchandise purchased direct from the manufacturer, without the services of a commissionaire, will show on the invoices therefor an item of 15 per centum for "export service rendered" which appears on each of the said exhibits.

The United States examiner testified that his advisory report concerning the shipment in question was accepted by the appraiser and that prior to issuance of a price list by said A. Schonbek & Co., dated March 5, 1946 (defendant's exhibit 8), the "15% commission was allowed as non-dutiable." The said price list includes glass prisms like those under consideration, identified as manufacturer's numbers 130 and 131.

The record has been reviewed in much detail because the question before me is purely one of fact. Whether or not an item is a buying commission must depend on the facts in each particular case. *United*

*States* v. *Bauer et al.*, 3 Ct. Cust. Appls. 343, T. D. 32627. The authorities are also consistent to the effect that a charge for services associated with the purchase of merchandise in the foreign market, and which is not an amount that inures to the benefit of the seller, is a buying commission, which, although affecting the cost of goods to the importer, is not part of the market value of merchandise and, hence, is a nondutiable item. *United States* v. *Case & Co., Inc.*, 13 Ct. Cust. Appls. 122, T. D. 40958; *United States* v. *Alfred Kohlberg, Inc.*, 27 C. C. P. A. (Customs) 223, C. A. D. 88; *Stein* v. *United States*, 1 Ct. Cust. Appls. 36, T. D. 31007.

So far as the shipment in question is concerned, the proof is conclusive in showing that the plaintiff corporation had a commissionaire in the country of exportation, who performed services on its behalf; that the foreign manufacturer of the present merchandise recognized the relationship between the American importer and the commissionaire as that of principal and agent; and that the commissionaire, as a buying agent, received from the importer a commission of 15 per centum, none of which was paid to the manufacturer. I am not willing, however, to accept that procedure which was followed in the particular transaction under consideration to be all determinative of the present issue. There is proof in this case showing that the manufacturers sold direct to American importers without the intervention of a commissionaire and that in such transactions a charge was made "under the title of '15% advance for export services rendered,'" and "By this selling advance the export overheads of the manufacturer are being covered which, as a matter of fact, are omitted for an inland business" (collective exhibit 4, *supra*). At the same time, commissionaires operated in the Czechoslovakian glassware industry, acting on behalf of importers in this country in the purchase, shipment, and payment of merchandise, and for which services the American importer paid a commission. In other words, the combined proof discloses two methods prevailing in the foreign country with respect to the importation of merchandise like that under consideration. Thus, the question for determination is which of the two procedures shall be accepted as the ordinary course of doing business.

Convincing testimony was presented by defendant's witness, Irving Levin, who is "one of the major importers," thoroughly familiar with the general trade and the method followed by his competitors and fellow importers. He stated, in effect, that business in the country of exportation at the time of shipment of the present merchandise was generally done with small manufacturers whom he characterized as "small factories, hand workers," and in such cases a commissionaire was usually employed to take care of the importer's

interests. That testimony lends complete support to the line of proof offered by the plaintiff.

The evidence adduced by the defendant does not support its allegations. Its documentary proof is extremely limited in scope. The invoice, defendant's exhibit 7, *supra*, and the price list, defendant's exhibit 8, *supra*, relate to the business of the said A. Schonbek & Co., who is concededly a commissionaire as well as a manufacturer. In view of plaintiff's testimony emphasizing the activities of said company as a commissionaire in the class of merchandise under consideration, neither of said exhibits are persuasive toward reaching a conclusion favorable to defendant's position. The same is true with respect to the invoices, defendant's exhibits 3 and 6, *supra*. The former, as hereinbefore set forth, refers to a shipment of several items from Leder Bros. of Jablonec, Czechoslovakia, to the plaintiff corporation. That invoice, said exhibit 3, considered in conjunction with all of the evidence presented herein, appears as an isolated instance and is not representative of the usual or ordinary method of doing business. The invoice, defendant's exhibit 6, *supra*, is from the manufacturer of the present merchandise to another American importer. While that paper shows an item of "15% export service rendered," said invoice (exhibit 6), by itself, is merely evidence of the invoicing procedure followed in the particular transaction covered thereby. The invoice alone has no substantial value, expecially in the light of the testimony on behalf of plaintiff offered by the manager of the foreign manufacturer in his affidavit, plaintiff's exhibit 1, *supra*, definitely recognizing the services of a commissionaire or buying agent for the American importer of the present merchandise.

The preponderance in weight of the evidence, as hereinabove outlined, is satisfying that the invoice item described as "15% buying-commission" was, at the time of exportation of the articles in question, a buying commission and, as such, forms no part of the market value of said merchandise.

I find as matter of fact:

(1) That the merchandise in question consists of glass prisms, identified by manufacturer's numbers 130 and 131, exported from Czechoslovakia and entered at the port of New York, and is usually manufactured in small factories.

(2) That at the time of exportation of the articles in question, such or similar merchandise was usually or ordinarily bought in the foreign market for exportation to the United States through a commissionaire who acted as buying agent for the American importer.

(3) That for such services associated with the purchase of the goods, the commissionaire received a commission of 15 per centum.

Accordingly, I hold as matter of law that export value, as defined in section 402 (d), *supra*, is the proper basis for appraisement of the present merchandise, and that such statutory value does not include the item described on the invoice as "15% buying-commission."

Judgment will be rendered accordingly.