(Reap. Dec. 10504)

MORRIS FRIEDMAN *v.* UNITED STATES

Entry No. 8935, etc.

(Decided May 9, 1963)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Alfred A. Taylor, Jr.,* and
*Samuel D. Spector,* trial attorneys), for the defendant.

FORD, Judge: The cases listed in schedule "A," annexed hereto and made a part hereof, were consolidated for the purpose of trial. The merchandise described as fishing rods was appraised at given unit f.o.b. prices. The merchandise described as baseball gloves was appraised at the unit invoice values, plus certain charges, plus 3 per centum commission in all cases except two, i.e., reappraisements 286446-A, which included a 4 per centum commission, and 286444-A, in which no commission was added.

Plaintiff herein contends that the correct dutiable value of the merchandise described as fishing rods was the price shown as "exfactory, boxed," and that, in the cases involving baseball gloves, the invoice unit price is the correct dutiable value. Plaintiff, therefore, contends that the inland charges in both instances and the commission of 3 per centum or 4 per centum included in the appraisement of the baseball gloves are not properly part of the dutiable value.

At the trial of this matter, counsel for plaintiff conceded that, other than inland charges and commissions, the appraised values were correct. Mr. Henry S. Wolfe was called on behalf of plaintiff and testified that, on or about the dates of the importations involved herein, he was the buyer for Stan Textile & Hardware Co. and Rota Import Corp., the actual importers involved herein; that he personally purchased the merchandise involved; that, in 1955, he went to Japan and met Mr. John Tanaka of the Hosho Corp.; that both of them went to the factory of the Nippon Fishing Tackle Co., Ltd., who was a manufacturer of bamboo fishing poles, but had never previously manufactured glass fishing rods; that he examined rod blanks, which are tubular glass used in the manufacture of the rod, and selected the guides and other component parts for the type of rods he wanted; that the manufacturer then arrived at a price ex-factory. The witness was not completely familiar with the term ex-factory, but stated that the company quoted him an ex-factory price. Mr. Wolfe then calculated with Tanaka an f.o.b. price. Mr. Tanaka received compensation for his services, pursuant to an agreement, which was received

in evidence as plaintiff's exhibit 1, relative to Stan Textile & Hardware Co., and plaintiff's exhibit 2, with respect to the Rota Import Corp. The witness was at a loss to explain why the agreement did not contain the amount of compensation, but he believed it to be 3 per centum in 1955, which was subsequently increased to 4 per centum on or about March 15, 1956.

The witness further testified that, with respect to the baseball gloves, he also had to advise the factory about the American styles of leather and styling of gloves and had to take the company representatives to a tannery in order to select the color of leather, the weight, and type; that they purchased the leather under his supervision; that they figured out how many feet would go into a baseball glove and other parts; that, then, the manufacturer figured out his cost at ex-factory prices; that the f.o.b. price was arrived at in the same manner as was done with the fishing poles.

Mr. Wolfe testified that, with respect to the one entry in which no commission was charged, the shipment was actually a claim shipment, due to the fact that the first shipment of gloves to the United States was defective. Apparently, the gloves were made to fit the specifications of the inspector, who happened to have very short fingers.

Based upon the record as made, plaintiff contends the contested elements are not properly part of the dutiable value.

Since there is a difference in the merchandise and a commission is involved with respect to the baseball gloves, but not the fishing poles, I shall discuss them separately.

The fishing poles were appraised at the f.o.b. price, but the invoices give a complete breakdown of the ex-factory unit price, plus the share of the inland charges. Under the principles of *United States* v. *Fritzsche Bros., Inc.*, 35 CCPA 60, C.A.D. 371, the correctness of the appraiser's action may be challenged with respect to any of the elements which, under the tariff act, constitute the basis of value of the imported merchandise. Accordingly, where an importer challenges one item or one group of items, such as in the instant case, the presumption of correctness as to all other items stands. The invoices of the fishing rods clearly set forth the ex-factory price and the share of inland charges which, when added together, constitute the f.o.b. unit price, which was the appraised value.

Since the plaintiff herein is challenging only the inland charges relative to the fishing poles, the presumption of correctness attaches to the ex-factory price. It is, therefore, incumbent upon the plaintiff to establish that the imported fishing poles were offered ex-factory, without the additional inland charges. The affidavit, plaintiff's exhibit 3, of Nippon Fishing Tackle Co., Ltd., the manufacturer, which merely states, so far as is pertinent herein:

\* \* \* that such sales and offers for sale of such articles were then normally made to wholesale buyers on the basis of prices ex factory; and that such fishing rods could then, and can still be delivered at our factory without any additional charges;

is an unsupported statement which is without evidentiary value under settled law. Accordingly, in my opinion, the record is insufficient to establish an ex-factory price. *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495; *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593.

The proof relating to the baseball gloves, insofar as the so-called inland charges are concerned, falls within the same reasoning as set forth, *supra*. The question of the commission of 3 per centum or 4 per centum involved in the matter of the baseball gloves would likewise be governed by the *Fritzsche* case, *supra*, and it is incumbent for plaintiff to establish that such commission was, in fact, a buying commission. The agreement between the commissionaire and the importer of the baseball gloves was received in evidence as plaintiff's exhibit 2. The purported agreement, dated November 1, 1955, sets forth the duties of the agent and the following information:

THE HOSHO CORPORATION is to receive a buying agent commission in connection with the placement of orders with the actual makers, checking and inspecting shipments when required, arranging for shipment inland to seaport, arranging for vessel booking and shipment to the U.S.A., and the preparation of all the necessary shipping documents.

Except for the designation of the Hosho Corp., in exhibit 2, as a buying agent, the record lacks convincing evidence which would establish with definite certainty that Hosho was in fact, as well as in name, a buying agent. The record contains no testimony from the agent that he did perform the duties set forth in the purported agreement, does not explain the lack of provisions for compensation, does not outline what his compensation was, nor is there any evidence which would establish that the merchandise could be bought without Hosho and thereby negate the fact that Hosho was not a selling agent. These are but a few of the facts which the record does not clearly establish. Upon the record as made, plaintiff has failed to overcome the presumption of correctness attaching to the action of the appraiser.

I, therefore, find:

1. That the merchandise involved consists of fishing rods and baseball gloves, exported from Japan during the period commencing October 24, 1955, and ending August 24, 1956;

2. That the merchandise involved was appraised on the basis of export value (section 402(d) of the Tariff Act of 1930);

3. That there is no competent evidence to establish that the merchandise was freely offered at the factory at an ex-factory price;

4. That there is no competent evidence to establish that the buyer commissionaire was, in fact, acting as buying agent.

I, therefore, conclude:

1. The proper basis of appraisement of the merchandise involved herein is export value, as that value is defined in section 402(d) of the Tariff Act of 1930, and such statutory values are as found by the appraiser;

2. The statutory presumption of correctness attaching to the appraiser's return of value for the merchandise covered by the appeals for reappraisement listed in schedule "A," annexed hereto and made a part hereof, has not been overcome.

Judgment will be rendered accordingly.