(A.R.D. 178)

MORRIS FRIEDMAN v. UNITED STATES

Entry No. 8935, etc.

Third Division, Appellate Term

(Decided June 16, 1964)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the appellant. *John W. Douglas*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellee.

Before DONLON and RICHARDSON, Judges; DONLON, J., concurring

RICHARDSON, Judge: This is an application by the importer for a review of the decision and judgment of a single judge, sitting in reappraisement, in *Morris Friedman* v. *United States*, 50 Cust. Ct. 461, Reap. Dec. 10504, and holding that the appraised values represent the proper dutiable values of the involved merchandise.

The only questions presented concern the dutiable status of certain inland freight and f.o.b. Japan charges which were added on appraisement to the invoice unit prices on all of the involved entries, and certain so-called "buying commissions" in varying amounts which were added on appraisement to the invoice unit prices on some of the involved entries. Appellant contends that these additions were improper, while the appellee contends that the charges were properly added.

The merchandise consists of various glass fishing rods made in Japan by the Nippon Fishing Tackle Co., Ltd., and baseball gloves made in Japan by the Matsukan Sporting Goods Co., Ltd. These articles were exported from Japan by the Hosho Corp. of Tokyo during the period from October 1955 to August 1956 and were entered at Philadelphia by appellant for the account of the ultimate consignees. The fishing rods were appraised at given unit f.o.b. prices which included the questioned shipping charges. With one exception, the baseball gloves were appraised at the unit invoice values, plus shipping charges, plus buying commission.

On all but one of the involved invoices, whether covering fishing rods or baseball gloves, a buying commission was listed as not having been

included in the invoice price. However, the item of the commission was excluded from the appraisement on the invoices covering the fishing rods, but it was included in the appraisement covering the baseball gloves. In this connection, it should be noted that the fishing rods were appraised by one appraiser, while the baseball gloves were appraised by another appraiser at the port of entry. And, as previously noted, in the one case of a shipment of baseball gloves where no commission was added to the unit value on appraisement, it appears on the invoice covering this shipment that no commission was charged.

The evidence of record is both testimonial and documentary. Henry S. Wolfe testified on behalf of the importer, the appellant herein. He stated that, on the dates of exportation here involved, he was the buyer for Stan Textile & Hardware Co., one of the ultimate consignees of the merchandise at bar, and held a similar position with the Rota Import Corp., the other ultimate consignee herein, for both of whom he personally purchased the involved merchandise. He testified that he went to Japan in 1955, met John Tanaka of the Hosho Corp., and both of them went to the factory of the Nippon Fishing Tackle Co., Ltd.; that the Nippon company had never previously manufactured glass fishing rods, it being a manufacturer of bamboo fishing poles; that he examined rod blanks, which are tubular glass used in the manufacture of the rod, and selected the guides and other component parts for the type of rods he wanted; that the manufacturer then arrived at an ex-factory price—terminology with which the witness expressed some unfamiliarity—and that he then calculated an f.o.b. (port of exportation) price with Tanaka.

With respect to the baseball gloves, Mr. Wolfe testified that he had to advise the factory about American styles of leather and styling of gloves and had to take company representatives to a tannery to select the color, weight, and type of leather desired; that they purchased the leather under his supervision; that they figured out how many feet would go into a glove and other parts; that the manufacturer then figured out his cost at ex-factory prices; and that the f.o.b. (port of exportation) price was arrived at in the same manner as was done with the fishing poles.

As for compensation to Hosho, the witness stated that he had an arrangement with Tanaka whereby Hosho was to receive a 3 percent commission to be paid on the basis of the total cost of the merchandise including inland freight. Agreements between the Hosho Corp. and the ultimate consignees, designating the former as buying agent for the latter, were received in evidence as plaintiff's exhibits 1 and 2. Although the agreements state that Hosho Corp. is to receive a buying commission for various services, no provisions are made therein for the amounts of the commissions. Mr. Wolfe was unable to explain why the agreements did not contain statements of the amounts

of the commissions to be paid to the Hosho Corp. He stated that he believed it to be 3 percent in 1955, and that it was subsequently increased to 4 percent on or about March 15, 1956.

Received in evidence also were affidavits, respectively, of Y. Itoh, president of the Nippon Fishing Tackle Co., Ltd., and Genya Osawa, manager of the Matsukan Sporting Goods Co., Ltd. (plaintiff's exhibits 3 and 4). Both of these affidavits are to the same effect, namely, that the affiants are familiar with the sales made to the ultimate consignees herein; that they personally made such sales; that they personally sold and offered for sale such merchandise to other buyers, at or about the time the involved sales were made, at the same ex-factory prices for the usual wholesale quantities; that such sales and offers were then normally made to wholesale buyers on the basis of ex-factory prices; and that such merchandise could then, and can still, be delivered at their respective factories without any additional charges.

The foregoing comprises the evidence which was before the single judge. The court sustained the appraised values after reviewing the evidence and finding it insufficient to overcome the presumption of correctness attaching to the action of the appraiser. The court was of the opinion that the affidavit evidence is an unsupported statement which lacks evidentiary value and that the omission of a compensation clause in the commission contract, the lack of evidence of performance of the contract, and the absence of evidence negating the role of the exporter as selling agent deprives the record of convincing evidence of the payment of a "buying commission." Among other things, appellant argued before the trial court and in support of this application that the evidence established that the merchandise at bar could be purchased at the factory at a price which did not include the charges at issue and that a commission was paid to a buying agent which does not form part of the dutiable value of the baseball gloves.

We agree with the trial court's finding of insufficiency of the evidence to establish an ex-factory price for the fishing rods and baseball gloves at bar and the payment of a buying commission as an item of expense to be deducted from the unit value of the baseball gloves. The sole evidence of an ex-factory price in the record before us consists of the affidavits in plaintiff's exhibits 3 and 4. The statements contained therein are, at best, mere conclusions couched in the language of the valuation statute, wholly devoid of evidence of sales or offers of sale to support the conclusions. Such conclusions, unsupported by any records or by any sales or offers to sell, do not constitute substantial evidence of ex-factory prices sufficient to overcome the presumption of correctness attaching to the appraiser's valuation. *United*

*States* v. *Kurt Orban Company, Inc.*, 44 Cust. Ct. 759, A.R.D. 116, and cases cited therein on pages 761 and 762. These authorities are clearly dispositive of the issue of inland freight and f.o.b. port of exportation charges.

With respect to the item of buying commission, the evidence of its payment is founded principally upon the executory agreements received into evidence as plaintiff's exhibits 1 and 2. It will be observed that the position taken in these agreements by one of the parties, namely, the Hosho Corp., is directly opposite of the position which it subsequently took in its declarations on the consular invoices which accompanied the involved entries wherein the Hosho Corp. stated that it was the seller of the involved merchandise on most if not all of the invoices. It does not appear of record whether the agreements in exhibits 1 and 2 were before the two appraisers at the port of entry who appraised the involved merchandise. But, certainly, the consular invoices were before these appraising officers at the time of appraisement. It may well be that the appraiser who handled the baseball gloves could have been influenced by the declarations of the alleged buying agent as "seller" under an "agreement of purchase" which appears on all of the entries covering baseball gloves where a commission was charged, and does not appear on the single entry of gloves where no commission was charged. Such a repudiation of the capacity in which it is claimed that the commission was paid would justify a determination by an appraising officer that the commission was not, in fact, a *bona fide* buying commission, but an element of price which should be added to the value of the merchandise. *United States* v. *Herrman*, 91 F. 116.

In any case, we are fully in accord with the position taken by the trial court that the absence of a clause in the agreements specifying the amount of commission which the alleged buying agent is to receive for his services strikes at the very heart of the agreements, and vitiates their existence. And the vagueness and uncertainty of the witness about the matter does nothing to close the gap left by the rejection of these documents as evidence of a buying commission.

One thing which is deserving of comment is the fact that the rejection of the evidence proffered herein with respect to the buying commission leaves intact two contradictory appraisements insofar as the commission is concerned pertaining to different items of merchandise having a common basis of origin and importation. Either the omission by one appraiser of the commission in the appraisement of the fishing rods is correct, or the addition of the commission in the appraisement of the baseball gloves by the other appraiser is correct. Both cannot be correct. Of course, the difficulty here is compounded by the fact that the documents were apparently interpreted differently

by the two appraisers, with each appraiser apparently arriving at his own conclusion independently of the other. Our view on the evidence operates to resolve the stalemate, but does not serve to change the result, even though our view of the evidence favors the addition of the commission to both classes of merchandise by reason of the failure of proof of its payment as a *bona fide* commission. However, the importer has challenged only the addition of the commission to one class of merchandise, namely, the baseball gloves. Indeed, the importer could not reasonably be expected to challenge the exclusion of the commission from the appraisement of the other class of merchandise here involved, in view of the advantage which it derives from such valuation. Nevertheless, the collector might have challenged the allowance of the commission in the appraisement of the fishing rods, but either failed to do so, or did interpret the evidence in the same manner as did the appraiser of that class of merchandise. In any event, since the collector did not challenge the appraisement by means of an appeal for reappraisement, we are not at liberty to disturb the appraiser's return as to the fishing rods, even though our determination with respect to the baseball gloves makes it logical to do so.

We have considered the other assignments of error claimed by appellant and his arguments in support of them and find nothing in them which would warrant disturbing the result reached by the trial court. For the reasons stated, the judgment is affirmed.

Judgment will be entered accordingly.

CONCURRING OPINION

DONLON, Judge: I reach the same result, namely, that the decision below should be affirmed. However, there are issues raised by appellant which, in my view, make it advisable to state what my opinion is, on which I have arrived at that result.

Appellant argues for the right to make certain deductions from an appraisement on the basis of export value. There is no allegation of error as to the trial judge's finding that export value is the proper basis for appraising this merchandise, both the fishing rods and the baseball gloves. Basis of appraisement is not an issue. It is export value.

Appellant's brief states that he "accepts the appraised ex-factory unit values." I do not see, either in the official papers or in the findings of the trial judge, any *appraised* ex-factory unit export *values*. There were entered, and appellant claims, certain ex-factory prices for the merchandise. But that is not how the appraiser appraised.

It is too well known to require citation of authority that the appraiser is deemed to have found each and every one of the statutory

elements that enter into his finding of dutiable value. In the case of export value, those findings, under old section 402(d), which is applicable here, include (1) market value, or price, (2) at the time of exportation, (3) at which such or similar merchandise, (4) is freely offered for sale in the principal markets of the exporting country, (5) in ordinary course of trade, (6) for exportation to the United States, (7) plus, *when not included in such price*, certain specified costs and charges that seem not to be in issue here.

I take it that appellant does not argue that the appraiser should allow any deductions from market value, or price, for there is no statutory authority in section 402(d) for any such allowance. What appellant argues is that he has overcome the presumption that the *prices* the appraiser found were correct, and has likewise borne the burden of proving that other prices are the correct export values of this merchandise.

It is in the light of this problem of proof that I review the findings of the trial judge, the allegations of error, and the arguments advanced before us.

Appellant's arguments concentrate largely on the findings of fact below, that "there is no competent evidence" to show freely offered ex-factory prices or to establish that the buyer commissionaire was a buying agent for appellant. While I might use somewhat different language to express the findings, I, too, would have found on the record before us that, on the weight of evidence of record, appellant (plaintiff below) had not shown the freely offered ex-factory prices which he claims.

Appellant has seized on certain language of the opinion below to belabor an ingenious and complicated argument as to hearsay evidence. This appears the creation of a straw man for the dubious satisfaction of knocking him down.

We have no issue here as to admissibility or nonadmissibility of hearsay evidence and, hence, no case for a requirement that there shall be timely objection to its introduction. Affidavits, such as that on which appellant relies, are made admissible in reappraisement appeals by statutory directive. No one may effectively object to their introduction into evidence.

Congress, however, has not told this court that every statement in each such affidavit is to be taken as conclusively binding on the court, or as sole proofs of affidavit assertions. Doubtless, Congress could not effectively dictate the judicial judgment of a constitutional court. At least, no one, save only appellant, seems to have attempted to show that Congress has done so.

The affidavit presents in the record one item of proof, to be weighed by the court as to its sufficiency either in overcoming or in failing to

overcome the presumption. Like the trial judge, I find that the affidavit here has not overcome the presumption.

Appellant's witness testified that he negotiated an f.o.b. price at the factory in Japan. He was unimpressive, under questioning, as to his understanding of what an ex-factory price is. Affiant, however, stated that the same goods, as those here in issue, *could* be bought by others at the same ex-factory prices; but did not state any *facts* in support of this conclusion, or facts as to what those asserted ex-factory prices were at the times of exportation of this merchandise.

Conclusory statements are not proofs of the facts on which the conclusions might be based. It is for the court to find, on the weight of factual evidence and where export value is the basis of appraisement, what price is and in what principal market. Mere assertion of the finding that is claimed by an importer, is not adequate proof of facts sufficient for the court to make the findings.

As Judge Johnson, speaking for our appeals court, said in the oft-cited case of *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495:

It appears to us that the basic error of the trial court lies in the failure to properly distinguish between *ultimate* facts and *evidentiary* facts. "Evidentiary facts" must be found from the testimony or other evidence. "Ultimate facts" are reasoned conclusions drawn from the evidentiary facts. *Commissioner of Internal Revenue* v. *Sharp et al.*, 91 F. (2d) 804, C.C.A. 3. Considered with reference to the facts or evidence by which they are established or proved, "ultimate facts" are but the logical results of the proofs, or, in other words, mere conclusions of fact reached by the processes of logical reasoning from the evidentiary facts. *Hickey et al.* v. *Ritz-Carlton Restaurant & Hotel Co. of Atlantic City*, 96 F. (2d) 748, C.C.A. 3. The ultimate facts are the *issuable* facts without proof of which plaintiff cannot recover. *Maxwell Steel Vault Co.* v. *National Casket Co.*, 205 F. 515; see also *United States* v. *Smith*, 39 F. (2d) 851, C.C.A. 1. [Italics quoted.]

The Supreme Court has defined "substantial evidence" as evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred. Substantial evidence, said the Court further, is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and it must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. *National Labor Relations Board* v. *Columbian Enameling & Stamping Co.*, 306 U.S. 292.

Under this test of substantial evidence we think it clear that a mere declaration of an essential ultimate fact in issue is not substantial evidence. As noted above, ultimate facts are to be deduced from evidentiary facts by inference, *Hickey* and *Revenue* cases, *supra*, and are the issuable facts which a complainant must prove to prevail, *Steel Vault* case, *supra*. This being the case, it seems clear that ultimate facts cannot at the same time also be the facts which afford a substantial basis of fact from which the fact in issue can be reasonably inferred. We believe these distinctions are implicitly recognized in the case of *National Labor Relations Board* v. *Hudson Motor Car Co.*, 128 F. (2d) 528,

wherein the Circuit Court of Appeals of the Sixth Circuit discussed the inter-relationship between "substantial evidence," "ultimate facts," and "primary" or "evidentiary" facts.   [P. 45.]

In *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593, Judge Cole said:

Appellant's right to introduce evidence by means of affidavit cannot be questioned.   It is expressly given to him by statute.   19 U.S.C. 1501; 28 U.S.C. 2633. The fact that the evidence in question was introduced by affidavit does not, however, affect the substantive issue of whether the statements therein appearing constitute substantial evidence of the ultimate facts sought to be proved thereby.   [P. 199.]

I concur in affirmance of the judgment below.