(A.R.D. 216)

UNITED STATES *v.* SHALOM & CO.

Entry No. 877051.

## Third Division, Appellate Term

(Decided December 20, 1966)

*Barefoot Sanders*, Assistant Attorney General (*Charles P. Deem*, trial attorney), for the appellant.

*Lane, Young & Fox* (*James G. McGoldrick* of counsel) for the appellee.

Before RICHARDSON and LANDIS, Judges, and DONLON, Senior Judge; LANDIS, J., concurring; DONLON, J., concurring

RICHARDSON, Judge: The instant application was filed by the Government for a review of the decision and judgment of a single judge sitting in reappraisement in *Shalom & Co.* v. *United States*, 56 Cust. Ct. 625, Reap. Dec. 11141, decided February 14, 1966, and holding that export value, represented herein by the appraised values less a 5 percent buying commission computed on the basis of the f.o.b. price, is the proper basis of value of the involved transistor radios and their accessory parts.

The merchandise at bar was exported from Japan, entered at New York, and advanced in value upon appraisement. There was no dispute between the parties below and none here as to the basis of valuation. The parties agree that export value as defined in 19 U.S.C.A., section 1401a(b) (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956) is the proper basis of value of the merchandise. The dispute centers around an item described in the invoice as a 5 percent commission and said by the importer to be excluded from the dutiable value because it is a *bona fide* buying commission, and claimed by the Government to constitute part of the value of the merchandise.

It appears from the official papers placed in evidence before the court that the radios and related parts were entered at a value of $8.92 each, and were appraised at a value of $9.555 each, net packed. The various items of cost are described on the commercial invoice No. SC-62/400 of Shriro Trading Co., Ltd., under date of October 8, 1962, as follows:

| Quantity | Description | Price | Amount |
|---|---|---|---|
| | TRANSISTOR RADIO SETS | Ex,-factory Inc. Packing Charge | |
| | Your Order No. 2–2002 Our Order No. TS/447 | | |
| 1,000 sets | No. 0/40481 "FLEETWOOD" Brand Model NTR–800.   8-transistor 2-Band Radio with leather case, earphone, battery & rod antenna. | $8. 92 | US$8, 920. 00 |
| * | *          *          * | *          *          * | |
| | The following charges are excluded [sic] from the above amount | | |
| | Inland Freight | $58. 40 | |
| | Ins. Prem. | 4. 10 | |
| | Storage | 12. 00 | |
| | Hauling & Lighterage | 102. 00 | |
| | Petties | 3. 50 | 180. 00 |
| | | FOB Kobe | US$9,100. 00 |
| | | 5% Comm. on FOB | 455. 00 |
| | | Total: | US$9,555.00 |
| * | *          *          * | *          * | * |

| Breakdown of Cost | | [Notations of Appraiser] Ent. Val. |
|---|---|---|
| Set alone | $8. 43 | $8. 50 |
| Leather case | 0. 14 | . 20 |
| Earphone | 0. 09 | . 12 |
| Battery | 0. 08 | . 10 |
| Rod antenna | 0. 08 | |
| Packing & Other charge | 0. 10 | |
| | $8. 92 | [ $8. 92] |

The appraisement is noted on this invoice, among other notations, as follows:

> App'd [at] U.S. $9.555
> each net Pkd.
> Value included
> Lea case   –20 ¢ ea.
> Earphones–12 ¢ ea.
> Battery   –10 ¢ ea.

Also included among the official papers is the confirmation of the order for the instant merchandise which among other things, contains the following:

HILLEL TSUSHO CO., LTD.

Messrs. Shalom & Co., New York
Our Order No. TS/447, September 7, 1962
Your Order No. SC–2–2002

Gentlemen:

We hereby confirm having bought on your behalf:—[Emphasis added.]

| * * * Description | Quantity | Exfactory _per set_ | FOB NET | TOTAL * * * |
|---|---|---|---|---|
| * * * "Fleetwood" 8–Tr. 2Band Radio, Model NTR–800, complete with leather case, earphone, battery & rod antenna, and with 18 Spare Parts. | 1000 sets | $8. 92 | $9. 10 | $9, 100. –* * * |
| | | 5% Our Commission | | 455. – |
| | | TOTAL FOB | | $9, 555. – |

Shipment: End of Sept., 1962      Remarks:
Terms of Payment: L/C
For Buyer:

For Seller:
HILLEL TSUSHO CO., LTD.
[Signature]
Please sign and return one copy

Without liability for non-delivery or delays arising from circumstances entirely beyond our control.

The evidence adduced by the importer, the appellee here, before the trial judge consisted of the testimony of two witnesses, and a contract which was received in evidence as plaintiff's exhibit 1. The Government, appellant here, offered no evidence. Sam Lustig, customs line examiner at the port of New York, testified that his duties include the examination of merchandise for appraisement and classification purposes, that he advisorily appraised the merchandise at bar at $9.555 each, net packed, and that his appraisement included all charges of which the item of $455 shown on the invoice, _supra_, as a commission, was one. It was stipulated by counsel that Mr. Lustig's appraisement was adopted by the appraiser.

Victor Shalom, a partner in the importing firm, testified that he is the firm's general manager and buyer, that he makes frequent trips to Japan and Hong Kong for the purpose of buying merchandise, including electronics and sundries, that he personally placed the order for the instant merchandise. He further testified that Hillel Tsusho Co., Ltd., of Tokyo, Japan, is the firm's commission or buying agent

whose duty it is to keep the firm posted on market conditions, prices, to send samples to Shalom & Co. in the United States, to accept orders from the firm, and to arrange for delivery dates and inspection and shipment of the merchandise. Mr. Shalom also testified that his firm had an arrangement with Hillel Tsusho Co., Ltd., under which Hillel was paid a commission for its services, and which arrangement was reduced to writing. The writing to which the witness referred is on Hillel's letterhead and is plaintiff's exhibit 1, the text of which reads as follows:

### AGREEMENT

This is to confirm our understanding as follows:

Messrs. Shalom & Co. hereby appoints the firm of Hillel Tsusho Co., Ltd. as a Buying Agent in Japan.

Hillel Tsusho Co., Ltd. must visit manufacturers in Japan, collect samples, submit those samples to Messrs. Shalom & Co. and to report regularly about the market situation, quoting prices at which the merchandise can be purchased.

Upon instructions from Messrs. Shalom & Co., Hillel Tsusho Co., Ltd. will place orders with manufacturers, inspect merchandise and arrange shipment.

Hillel Tsusho Co., Ltd. will be entitled to a buying commission of 5%.

In order to avoid misunderstanding in communicating with each other in quoting prices, it is hereby agreed that Hillel Tsusho Co., Ltd. will always submit to Messrs. Shalom & Co. the cost of merchandise F.O.B. Japanese port in United States Dollars which shall exclude their buying commission.

Consular and Commercial Invoices have to be made out in United States Dollars on basis of *Ex-Factory price*, specifying all charges like packing, inland freight to port, insurance to steamer, storage, hauling and lighterage, etc., as well Agent's buying commission.

This contract shall be in effect as of March 1, 1962 and will continue until one year after written nitification [sic] by one of the parties that they desire to discontinue this agreement.

The Buying Agent shall have no authority to bind Messrs. Shalom & Co. except upon written order or authorization by Messrs. Shalom & Co.

It is understood and agreed that the Agency hereby created is not exclusive.

SHALOM & Co.                                    HILLEL TSUSHO Co., LTD.

VS _____                                            [signature] _____

Mr. Shalom stated that this agreement was in effect on the date the order was placed and the date when the merchandise was shipped.

The importer urged the trial court to find that "HILLEL TSUSHO CO., LTD., performed services for plaintiff in connection with the pur-

chase of the instant merchandise and received a buying commission of 5% on the F.O.B. price," and further, that "The appraised value included a buying commission of 5% on the F.O.B. price." The Government contended that there has been a failure of proof on the part of the importer to establish the commission as a *bona fide* buying commission; that the appraisement is inseparable and as such prevents plaintiff from limiting its proof just to this item; and that there is an absence of proof of performance of the buying agency agreement and an absence of proof in the record showing the alleged agent did not act as a selling agent.

The trial court concluded that the evidence was sufficient to establish that the buying agency agreement had been substantially performed, and that, therefore, the item in question was a *bona fide* buying commission and as such, was non-dutiable.

On this application for review the Government reiterates the arguments it made before the trial judge, and in addition, has advanced new arguments before us. The same must be said of the importer's arguments with respect to its position both before the trial judge and before us.

The trial judge stated that the invoice shows "that the appraiser disallowed all invoiced inland charges and the 5 percent commission in arriving at the unit invoice value per radio." Actually on the invoice the appraiser marked the inland charges and the commission as non-dutiable and then proceeded to increase the unit price of the items of merchandise to a total figure that equaled the inland freight charges, and added an amount to the purchase price equal to the value of the buying commission. The customs examiner stated at the trial that the appraisement included "all the charges." (R.7.)

We think it was proper for the trial court to resolve the case on the issue of the alleged buying commission alone under the so-called "separability" rule, and we regard the buying commission as the only issue before us. Under the rule enunciated by our appeals court in *United States* v. *Freedman & Slater, Inc. (Household Utilities Mfg. Corp.)*, 25 CCPA 112, T.D. 49241, and followed by that court in *United States* v. *Schroeder & Tremayne, Inc., James H. Rhodes & Co.*, 41 CCPA 243, C.A.D. 558, and by the Customs Court in *Nelson Bead Co.* v. *United States*, 29 Cust. Ct. 490, Reap. Dec. 8175, *affirmed*, *United States* v. *Nelson Bead Co.*, 31 Cust. Ct. 481, A.R.D. 36, *affirmed without comment on the point* in 42 CCPA 175, C.A.D. 590, a party challenging a particular item of an appraisement need only present evidence to support its contention with respect to the disputed item, and that as to the unchallenged items the presumption of correctness of the appraisement still obtains.

With respect to the evidence at bar, we agree with the trial judge's finding that the buying agency agreement was substantially performed.

Also there is in the instant case no evidence which tends to establish that Hillel was a seller of its own merchandise, as did the documentary evidence before us in *Morris Friedman* v. *United States*, 52 Cust. Ct. 660, A.R.D. 178. In *Morris Friedman* v. *United States, supra,* on which reliance is placed by appellant, the alleged buying agency agreement before the court contained no stipulation of the amount or rate of commission to be paid to the alleged agent. In the case at bar, the agreement in question contains a stipulation of the amount or rate of commission. In the cited case there was no evidence before the court that the alleged contract had been performed. Here, there is substantial evidence of the performance of the contract. In the *Morris Friedman* case, there was evidence which beclouded the role of the exporter, and no evidence negating the role of the exporter as selling agent. In the instant case there is no evidence in the record which beclouds the role of the buying agent in the transaction under review which requires such evidence of negation. In *Morris Friedman* the sole evidence of an ex-factory price is based upon averments in affidavits pertaining to executory agreements. Here, evidence of an ex-factory price is established in the performance of the agreement as shown by the invoice and the corroborating testimony of the importer. In the *Morris Friedman* case the alleged agent, Hosho Corp., was designated as the seller on most of the consular invoices before the court. Here, the firm of New Hope Industrial Co., Ltd., is designated on the invoice as the seller. And in the *Morris Friedman* case, in further repudiation of the Hosho Corp.'s role as buying agent, the agreement mentioned in the consular invoices is there described as "Agreement of Purchase." In the instant case there is no such characterization of the agreement. Also, in *Morris Friedman* the testimonial evidence is marked by vagueness and uncertainty of the witness on essential matters. In the case at bar, the testimony is not vague or uncertain, but is clear and convincing.

We do not pass upon contentions advanced by appellant and appellee which were not made before the trial judge, or ruled upon in that judge's decision, where as here a decision on such matters is not necessary to dispose of the case. Appellate Divisions try cases upon the record made below and not upon the afterthoughts of counsel.

Upon the record before us, we find as matters of fact:

1. That the involved merchandise consists of transistor radios and accessories which were exported from Japan on or about October 29, 1962.

2. That the involved merchandise does not appear on the Final List, T.D. 54521, promulgated by the Secretary of the Treasury.

3. That said merchandise was appraised on the basis of export value as defined in 19 U.S.C.A., section 1401a(b) (section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of

1956) at an advanced ex-factory unit price of $9.555 each, net packed.

4. That the issue herein is limited to the sole question of whether an item appearing on the invoice as a 5 percent commission in the amount of $455 is a *bona fide* commission.

5. That the evidence establishes that Hillel Tsusho Co., Ltd., Tokyo, Japan, performed services for the importer as an agent in buying the imported merchandise under a written agreement, and was entitled thereby to a *bona fide* buying commission of 5 percent of the f.o.b. invoiced price of $9,100, amounting to $455.

6. That the evidence further establishes that the buying commission was included in the appraised unit value.

We, therefore, conclude as matters of law :

1. That export value, as defined in 19 U.S.C.A., section 1401a(b), is the proper basis for determining the value of the merchandise herein.

2. That the buying commission referred to in finding of fact No. 5 is not properly a part of the export value of the involved merchandise.

3. That the proper dutiable export value of such merchandise is the appraised value, less the buying commission referred to in finding of fact No. 5.

The judgment of the trial judge is affirmed.

Judgment will be entered accordingly.

### CONCURRING OPINION

LANDIS, Judge :   I concur with Judge Richardson's opinion affirming the trial court's decision herein and holding that the 5 percent commission in issue was a *bona fide* buying commission and comprised no part of the dutiable value of the merchandise.   The record is clear, in my opinion, that this commission was erroneously included by the appraiser in his valuation of the merchandise.

It is equally clear from the arrangement of the pertinent figures that this non-dutiable commission, added to the dutiable value, is distinctly identifiable in the official papers, and readily severable.   The application of the severability rule is but a minor and collateral issue, as demonstrated by the adjudicated cases.

The admissibility of the testimony of Examiner Lustig is resolved readily.   The questions and answers of record demonstrate no invasion of his mental processes as to why or how he arrived at the appraised value.   The numerous cases on this point amply cover the subject, hence any further comment would be mere repetition on my part.

The real and only issue in this case, as already stated, concerns the validity of the buying commission under the alleged buying agent's agreement.   Government counsel attacked this issue vigorously and at length.   The witness Shalom, although undoubtedly an interested wit-

ness, was competent to testify to the business arrangement between the parties. His testimony was not rebutted and we are not able to say it was without probative effect.

There is close enlightenment on the instant issue in *United States* v. *Randbur Co.*, 48 Cust. Ct. 721, A.R.D. 146. The merchandise there was certain cigarette lighters exported from Japan and entered at the port of New York. The Government's application for review of the decision of the trial court alleged error in holding that a certain buying commission did not form part of the dutiable value of the merchandise. The pertinent facts of the *Randbur* case, quoted from page 722, follow:

The importer, an individual doing business under the name of Randbur Co., plaintiff herein, testified as follows:

> * * * the merchandise was bought directly from the maker only through an agent, who has to ship it, who has to deal with us because the maker is incapable to keep up correspondence in English and to go along with us. So we always do all our Japanese business through an agent who we appoint to do this for us.

> We pay for this special commission, usually between 7 and 10 percent, all depends what kind of merchandise. In this particular case I had an agreement with Yoshinaga & Co., who was our agent, to give him 7½ per cent for all the dealings of merchandise which they offered us.

Support for the witness' oral testimony appears in an agreement (plaintiff's exhibit 1) between the foreign exporter and the plaintiff herein. Under the terms of the agreement, the foreign exporter visited Japanese manufacturers and reported regularly to plaintiff concerning conditions in the Japanese market, collecting samples that were submitted to plaintiff, and quoting prices that always included "buying commission and other charges." The agreement further provides that the foreign exporter, pursuant to instructions from plaintiff, shall place orders with the Japanese manufacturers, inspect the merchandise, and arrange for their exportation. For such services, the foreign exporter, as provided in the agreement, "will be entitled to buying commission 8%."

Defendant's evidence is a report, prepared by the supervising customs attaché in Tokyo, Japan (defendant's collective exhibit A). Information therein, that is pertinent to the present issue, is to the effect that Yoshinaga & Co., plaintiff's foreign exporter, is not a manufacturer of cigarette lighters, that said Yoshinaga & Co. acts "as a seller or as a 'buying agent,' " that the ordinary practice of the foreign exporter is to place orders with Japanese manufacturers upon receipt thereof from American importers, and that such an arrangement is not exclusive with any particular American importer.

It is to be noted that in the *Randbur* case, Government offered a report of its customs agent indicating that, among other factors possibly casting doubt on the agreement, the ownership interest of Yoshinaga & Co., Ltd., in the trademark "Omega," might have precluded Yoshinaga as a *bona fide* buying agent. However, despite such

facts as might have beclouded the validity of a genuine buying agent's agreement, the trial court was upheld on review that the commission paid under said agreement was a *bona fide* buying commission and thus not a part of the dutiable value.

The instant case is on firmer ground in establishing the commission as a *bona fide* buying commission. No facts of record becloud the validity of the agreement. The Government offered no reports or testimony to contradict the plaintiff's evidence. Here the buying agent's agreement is in evidence, as are the normal business consequences that followed pursuant thereto. It must be concluded plaintiff made out a *prima facie* case.

Based on the record and all of the foregoing, I concur.

### CONCURRING OPINION

DONLON, Judge: I concur with Judge Richardson that the record supports the finding of fact of the trial judge that the disputed item of $0.455 per transistor radio set was a buying commission and, as such, that it is a non-dutiable cost or expense. I concur, also, that the record shows, as a fact, that this buying commission was included by the appraiser in making the appraisement.

However, appellant's arguments on the issues of law seem to me to call for some further comment.

Appellant argues that the trial judge erred in admitting into evidence the testimony of Examiner Lustig, on the stated ground that examination of Mr. Lustig was an inquiry into his "mental processes." I am of opinion, as the trial judge was, that the testimony of Mr. Lustig was properly admitted, being merely a factual recital of what the examiner *did* in computing appraised value and not as to why he did it. The only testimony, on the part of the examiner, which might concern his "mental processes" was elicited by appellant (defendant below) on cross-examination of Mr. Lustig. That statement adds little to the record. Appellant argues, however, that there is an inconsistency between Mr. Lustig's forthright statement, on direct examination, that the appraisement at $9,555 for 1,000 sets did include the 5 percent or $455, the buying commission in dispute, and what may be a certain "hedging" on Mr. Lustig's part during his cross-examination. I find nowhere any denial of his direct testimony or anything that warrants a finding of error either in the fact as found by the trial judge or in his exercise of judicial discretion in admitting Mr. Lustig's testimony into evidence.

Appellant argues, also, that even if, *arguendo*, the inclusion in appraisement of the buying commission has been proved, and I confirm the finding below that it has been proved, nevertheless this appraisement is not one in which the so-called separability rule is available to

appellee and, therefore, appellee failed on trial in its proof of statutory export value.

The facts here differ to a degree from the facts in previous cases in which availability of the separability rule to plaintiffs has been judicially affirmed. Here, the red pencil figures of the appraisement do not show either the inland charges or the buying commission, although the entry papers clearly showed both of them as separately stated invoice items. They were, therefore, before the appraiser and known to him at the time of appraisement, as shown by the official papers before the court. By manipulation of figures, the appraiser arrived at a value that is exactly the same as the invoice aggregate, and such aggregate included both the inland charges and the buying commission. The examiner, testifying under subpoena, said that he included the buying commission in the appraised value which he recommended to the appraiser. He was an unwilling witness. His testimony is credible. Appellant conceded, by stipulation, that the appraiser adopted the examiner's recommendation.

The examiner's red figures are not the sole admissible proofs of the facts as to an appraisement. Separately included items of value may be shown by competent oral testimony, as here.

For a comprehensive discussion of the separability rule, I refer to the opinion of Chief Judge Rao in *Bud Berman Sportswear, Inc.* v. *United States*, 55 Cust. Ct. 574, Reap. Dec. 11056. While, there, the appraisement itself separately stated the disputed charges included in value, I see no distinction when the facts are proved, as here, by oral testimony and by stipulation, read in conjunction with the facts disclosed by the official papers.

The separability rule is a judicially contrived procedure which has, as its sole function, concentration of litigation on those matters that are in dispute. The time consuming, decision delaying and costly tactics of old procedures, which called for unnecessary proofs outside the controverted issues, are indeed outmoded. Where, as here, it is sufficiently shown that appraisement included an item of cost which plaintiff claims to be non-dutiable, and it is non-dutiable, and there is no other issue, common sense and sound judicial administration, in conjunction with the presumption of correctness that attaches to all parts of an appraisement not in controversy, call for limiting proofs to the disputed matter.

For the reasons I have stated, I concur.